**Linda KLEIN, pro ami, Appellant,**

v.

**Allen ABRAMSON, Respondent.**

**No. KCD 26625.**

Missouri Court of Appeals,
Kansas City District.

Aug. 5, 1974.

Motion for Rehearing and/or Transfer
Denied Sept. 3, 1974.

Application to Transfer Denied Oct. 14, 1974.

Joel Pelofsky, Kansas City, for appellant.

Don M. Jackson, M. Randall Vanet, Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an appeal from an order of the court below sustaining defendant's motion to dismiss the plaintiff's first amended petition. The precise question is whether a daughter can maintain a suit under Section 537.080 RSMo 1969, V.A.M.S., against her stepfather for her mother's wrongful death, allegedly caused by the stepfather's negligence.

The plaintiff's first amended petition is cast in two counts.

The first count in substance alleges that the plaintiff is the minor child of Phyllis Abramson, deceased; that on November 18, 1970, and prior thereto, the defendant was the lawful husband of Phyllis Abramson; that on November 18, 1970, Phyllis Abramson died and that her death was the direct and proximate result of the negligence of the defendant Allen Abramson. The negligence charged is that the defendant failed to obtain prompt medical assistance for deceased when he reasonably knew such assistance was necessary; that he failed and refused to provide medical treatment for deceased although in the exercise of due care he knew or should have known that such treatment was required; and that he failed to meet the responsibilities of a husband in the care of his wife. Plaintiff alleged that by reason of her mother's death she had suffered the loss of her mother's support and was damaged in the sum of $50,000.00.

In the second count of her petition the plaintiff pleads, in the alternative, that as a result of her mother's death she was deprived of the love and affection of her mother and suffered mental distress and was caused to become nervous and upset, all to her damage in the sum of $50,000.00.

Defendant's motion to dismiss this first amended petition was based upon the fact that since the deceased was the lawful wife of the defendant at the time of her alleged wrongful death due to the negligent acts of the defendant, the deceased herself would not have been able to maintain any action against the defendant had she survived because the law of Missouri does not permit interspousal actions as against public policy. This being true, the motion avers the plaintiff cannot maintain this action for wrongful death under either count of the petition for her mother's death under Section 537.080 RSMo 1969, V.A.M.S.

In addition to the allegations in the first amended petition, admitted to be true for the purposes of the motion to dismiss, the parties entered into a stipulation of facts wherein it was agreed that Linda Klein, a minor, the plaintiff, is the stepdaughter of Allen Abramson, the defendant, and was the natural daughter of the deceased Phyl-

lis Abramson.[1] It was further stipulated that on November 18, 1972, the date of the death of Phyllis Abramson, she and Allen Abramson were husband and wife, and were living apart, but not divorced.

As stated, the court below sustained the motion to dismiss the petition and assessed the costs against the plaintiff. From this final judgment, the plaintiff appeals.

The plaintiff asserts three points upon which she urges our mandate of reversal, which may be thus summarized: *First,* the court erred in holding that judicial construction of Section 537.080 RSMo 1969, V.A.M.S., barred this action under the facts above set forth; *Second,* the court erred in applying the doctrine of interspousal immunity to the facts above set forth since such is a "judge made doctrine" having no validity in this society; and, *Third,* a cause of action for loss of consortium, love and affection should exist when a child loses a parent and the court has the power to create such a remedy under its power to express the common law as such reflects the accepted conduct of society and, therefore, the trial court erred in dismissing Count II of the petition. We doubt that plaintiff's Points Relied On are in the strict compliance with the provisions of Rule 84.04(d), V.A.M.R., but we have nevertheless closely studied the appellant's brief and authorities, those of the respondent, and indulged in our own independent research. In so doing, we have found ourselves once again in the vexing field of interspousal and intrafamily immunity. We have concluded that the judgment below must be affirmed.

So far as our research has disclosed, the unique factual situation disclosed in this record has never been considered by an appellate court of this state. Under the existing decisions and statutory law of Missouri, this suit cannot be maintained. If such is to be modified or changed to permit the maintenance of this type of action,

the proper forum in which this must be done is either the Supreme Court or the General Assembly. We are bound by the controlling decisions of that court and the existing statutory law.

■ In Missouri, there was no common law cause of action for wrongful death. Glick v. Ballentine Produce Incorporated, 396 S.W.2d 609 (Mo.1965). The Wrongful Death Act (Sections 537.080–537.100 RSMo 1969, V.A.M.S.) created a new and different cause of action not known to the common law. Glick v. Ballentine Produce Incorporated, supra; Frazee v. Partney, 314 S.W.2d 915 (Mo.1958); Nelms v. Bright, 299 S.W.2d 483 (Mo.1957). The right of action thus created is neither a transmitted right nor a survival right. State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S.W. 51, 45 A.L.R. 1466 (banc 1926). Therefore, a party bringing an action under these statutes is required to " * * * bring himself *in his pleading* and *proof* strictly within" the statutory requirements. Harris v. Goggins, 363 S.W.2d 717, 724 [4] (Mo.App.1962) (appeal transferred to 374 S.W.2d 6 [Mo.]; Chandler v. Chicago & A. R. Co., 251 Mo. 592, 158 S.W. 35, 37 [3] (1913).

We must therefore look to and the plaintiff is necessarily bound by the statutes as to her right to maintain this action. In so doing, we must bear in mind the well-established principle that where a cause of action is created by legislative enactment, where none theretofore existed, such right may be conditioned as the legislative body sees fit. Glick v. Ballentine Produce Incorporated, supra, 396 S.W.2d 1. c. 615 [11].

The section of Missouri's Wrongful Death Act here involved is Section 537.080 [as amended Laws 1955, p. 778, § 1 (§ 537.070); Laws 1967, p. 663, § 1] which states in pertinent part:

"Action for wrongful death—who may sue

---

1. While it is neither alleged nor stipulated, it seems to be accepted as a fact in the briefs that Linda was never legally adopted by the defendant.

Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, *and* the act, neglect or default *is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof,* then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, * * *" (Emphasis supplied) [2]

■ The clear meaning of this statute is that the legislature saw fit to condition the right to sue for wrongful death upon the primary fact that the decedent could have maintained an action for damages for the injuries had he survived. If such condition cannot be shown, no cause of action for the wrongful death exists. Worth v. St. Louis-San Francisco Ry. Co., 334 Mo. 1025, 69 S.W.2d 672, 674 (1934); Fitzpatrick v. Kansas City Southern Ry. Co., 347 Mo. 57, 146 S.W.2d 560, 565 (1940); Zuber v. Clarkson Construction Company, 315 S.W.2d 727, 733 (Mo.1958).

■ The ultimate question for determination on this appeal therefore is: Could Phyllis Abramson, had she survived, have maintained an action against her husband, Allen Abramson, for his alleged tortious conduct? Under the present state of the Missouri decisional law, the answer to that query must be in the negative. We reach this conclusion by reason of the decisions of the Supreme Court of Missouri which prohibit litigation between husband and wife involving personal torts.

This judicial doctrine, sometimes called "interspousal immunity", has been firmly fixed in Missouri since the case of Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382 (1915) and has survived in the decisions of Planck v. Planck, 199 S.W. 1183 (Mo. 1917); Willott v. Willott, 333 Mo. 896, 62

S.W.2d 1084 (1933); Hamilton v. Fulkerson, 285 S.W.2d 642 (Mo.1955); Ennis v. Truhitte, 306 S.W.2d 549 (Mo. banc 1957); Brawner v. Brawner, 327 S.W.2d 808 (Mo. banc 1959); Deatherage v. Deatherage, 328 S.W.2d 624 (Mo.1959); Ebel v. Ferguson, 478 S.W.2d 334 (Mo. banc 1972).

It would profit little to discuss these authorities in the matter before us except to note that a careful reading of those decisions clearly indicates that this problem has sorely vexed both bench and bar since *Rogers,* as have other areas of immunity, i. e. charitable, governmental, etc. Some of the decisions are based upon the common law theory that a man and wife are one (unity of persons); some upon considerations of public policy (domestic tranquility, preservation of marital peace and status); and others, upon the basis that the legislative intent has declared the public policy of the state since it has never enacted into law the right to maintain such an action. That judicial doubts exist is further indicated by the fact that in Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645 (1936), the court held that a wife could maintain an action under the doctrine of respondeat superior against her husband's employer based upon a tort by the husband resulting in injuries to the wife; in Hamilton v. Fulkerson, supra, the court sanctioned a suit by a wife against her husband for personal injuries, arising from a prenuptial tort; and in Ennis v. Truhitte, supra, the court held a wife could sue her husband's administrator for a wrongful act committed by the husband during coverture. (This latter decision is specifically overruled, however, in Ebel v. Ferguson, supra, and is not to be followed). There were strong and well-reasoned dissents in Brawner v. Brawner, supra, and Ebel v. Ferguson, supra.

■■ We have no doubt that this doctrine of interspousal immunity will receive further judicial and legislative attention in

2. This statute was first enacted in 1855 (R.S. 1855, p. 648, § 3) and the part of the present statute quoted herein has remained substantially unchanged since that time.

the future. For the purposes of this case, however, the above decisions are absolutely binding upon us, Forsthove v. Hardware Dealers Mutual Fire Insurance Company, 416 S.W.2d 208, 213 (Mo.App.1967), and under their clear mandate Phyllis Abramson could not have maintained a cause of action against her husband[3] for damages based upon a personal tort. It follows that under the specific terms of Section 537.080 RSMo 1969, V.A.M.S., no cause of action for her wrongful death ever existed so that her natural daughter, plaintiff herein, could sue thereon. The trial court properly dismissed Count I of plaintiff's petition.

Count II of plaintiff's petition sounds in a theory based upon loss of consortium, to the damage of the minor child of the deceased mother. As the appellant aptly states in her brief, "Traditionally, this cause of action has not been associated with a wrongful death action."

 As we understand the plaintiff's position, we are urged to declare a principle and create a new remedy that a child may sue for the loss of a parent and the resulting loss of support, affliction of grief and mental distress, entirely independent of the rights afforded under the Wrongful Death Act. She cites in support of this position the case of Novak v. Kansas City Transit, Inc., 365 S.W.2d 539 (banc 1963) wherein it was held, for the first time in Missouri, that a wife could recover damages for consortium and loss of the services of her husband as a result of injuries negligently inflicted upon him by a third party. We do not find *Novak* in point here.

As previously pointed out by the enactment of the Wrongful Death Act, the legislature created a new cause of action which did not exist at common law. In so doing, it preempted the field and declared the nature of the action, the conditions for

the maintenance, the damages and elements thereof recoverable and the parties entitled to sue. Children's rights, as well as the rights of adults, are therein defined and limited. If a new cause of action is to be created, the conditions for maintenance of suit relaxed or the elements of recoverable damage broadened, such must be accomplished by legislative authority. (Ebel v. Ferguson, supra, 478 S.W.2d 1. c. 336).

For the reasons herein stated, the judgment below is affirmed.

All concur.

---

3. The point is emphasized in appellant's argument that the fact of separation would bear upon this legal premise. Such is not the case. In *Ebel*, the parties were divorced and the court held this fact did not sanction such action for a tort committed during coverture.