Sheila **HESTER**, by her Next Friend, Crystal **SCOTT**, and Christopher Hester, by his Next Friend, Mistalenna Warner, Appellants,

v.

Regina **RYMER**, Personal Representative of the Estate of John Rymer, Respondent.

No. 14671.

Missouri Court of Appeals, Southern District, Division One.

Sept. 29, 1986.

**252**

William H. McDonald, Rex C. McCall, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for appellants.

Dale L. Davis, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for respondent.

CROW, Chief Judge.

This is an appeal from an order dismissing one count of a four-count petition. In the dismissed count, two children, Sheila Hester and Christopher Hester ("plaintiffs"), sought damages for the alleged wrongful death of their mother, Patty Lou Rymer ("the victim"). Plaintiffs averred that the victim was fatally wounded November 18, 1984, when her husband, John Rymer—plaintiffs' stepfather—"negligently and recklessly" discharged a handgun, the bullets striking the victim in her chest and abdomen.

Plaintiffs filed suit May 15, 1985, naming as defendant Regina Rymer, personal representative of the estate of John Rymer, deceased. In their brief, plaintiffs tell us that John Rymer, after inflicting the fatal wounds on the victim, committed suicide. Defendant, in her brief, disputes the allegation that John Rymer committed suicide, but defendant concedes that John Rymer was deceased at the time suit was filed.

The other three counts of the petition remained unadjudicated in the trial court at the time plaintiffs took this appeal. Those counts, respectively, were a claim by plaintiff Sheila Hester for personal injuries allegedly sustained by her November 18, 1984, when she was struck by a bullet from the handgun discharged by John Rymer, a claim by plaintiff Christopher Hester for emotional distress allegedly caused him the same date when bullets from the handgun discharged by John Rymer passed through a door of a room occupied by Christopher Hester, and a claim by plaintiff Sheila Hester for emotional distress allegedly caused her the same date by all of the shots heretofore described.

Plaintiffs alertly recognized that the appealability of the order dismissing the wrongful death count might be questioned, particularly in view of the trial court's failure to designate the order as a final judgment for purposes of appeal per Rule 81.06, Missouri Rules of Civil Procedure (17th ed. 1986). Consequently, at the outset of their brief, plaintiffs addressed that issue, citing *Crenshaw v. Great Central Insurance Co.*, 527 S.W.2d 1 (Mo.App.1975), in support of their position that the order is appealable. We agree that it is, but shall defer discussion of that issue until we have considered the appeal on the merits.

Section 537.080, RSMo Cum.Supp.1984 provides, in pertinent part:

"Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance *which, if death had not ensued, would have entitled such person to recover damages in respect thereof,* the person or party who ... would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for

(1) By the ... children, natural or adopted, legitimate or illegitimate, ... of the deceased...." (Emphasis added.)

Circumstances virtually identical to those before us appeared in *Klein v. Abramson*, 513 S.W.2d 714 (Mo.App.1974). There, a child averred that her mother died as the result of alleged negligence of the mother's husband (the child's stepfather). The stepfather moved to dismiss on the ground that inasmuch as the deceased was his wife at the time of the alleged negligence, the deceased, had she survived, would have been

unable to maintain any action against him, as the law of Missouri did not permit interspousal actions.[1] Consequently, argued the stepfather, his stepdaughter had no cause of action. The trial court dismissed the suit, and the appellate court affirmed, stating:

> "The clear meaning of [the wrongful death] statute is that the legislature saw fit to condition the right to sue for wrongful death upon the primary fact that the decedent could have maintained an action for damages for the injuries had he survived. If such condition cannot be shown, no cause of action for the wrongful death exists." *Id.* at 717[2].

Thus, reasoned the court, the ultimate question was whether the deceased could have sued her husband had she survived. On that issue, the court said:

> "Under the present state of the Missouri decisional law, the answer to that query must be in the negative. We reach this conclusion by reason of the decisions of the Supreme Court of Missouri which prohibit litigation between husband and wife involving personal torts." *Id.* at 717.

The court, in support of that statement, cited a line of Supreme Court decisions beginning with *Rogers v. Rogers*, 265 Mo. 200, 177 S.W. 382 (1915), and ending with *Ebel v. Ferguson*, 478 S.W.2d 334 (Mo. banc 1972).

As we shall presently see, *Ebel* is the crucial case in deciding this appeal. However, before examining *Ebel*, it is necessary to consider a case that preceded *Ebel*. That case is *Ennis v. Truhitte*, 306 S.W.2d 549 (Mo. banc 1957).

In *Ennis*, a woman sued the administrator of the estate of her deceased husband, seeking damages for personal injuries she sustained as a result of her husband's alleged negligent operation of an automobile.

The accident occurred July 15, 1955, the husband died December 3, 1955, and the suit was filed five months thereafter. The trial court granted the administrator's motion to dismiss the petition on the ground that it failed to state facts upon which relief could be granted. The trial court relied on cases such as *Rogers*, which denied one spouse the right to recover against the other for a personal tort committed during coverture.

On appeal, the Supreme Court reversed and remanded. The majority opinion, concurred in by five judges, examined the development and rationale of the doctrine on which the trial court had relied. The opinion pointed out that some cases had held that at common law, neither husband nor wife had a cause of action against the other for injuries to his or her person, while other cases did not say there was no tort, but only that an action for a personal tort committed by a husband against a wife during coverture could not be maintained. The court then stated:

> "The circumstances of this particular case do not infringe any reasons of policy, the married women's acts and the survival statutes do not preclude the action, and the facts alleged in the petition, if accepted, state a cause of action." *Id.* at 551–52.

Two judges dissented, noting that "whatever the theory our courts have, over a long period of years, imposed a strict rule of disability upon the wife forbidding her from suing the husband for torts," and that if the rule was to be abandoned, "the change might better come from the legislature than from the courts." *Id.* at 552.

It is evident, of course, that if *Ennis* be the last controlling decision of the Supreme Court of Missouri on the issue whether a woman can maintain an action against the

---

1. The wrongful death statute, at the time of the death in *Klein* (§ 537.080, RSMo 1969) provided, in pertinent part: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, *and* the act, neglect or default *is such as would, if death had not ensued, have entitled the party injured to main-* *tain an action and recover damages in respect thereof,* then, and in every such case, the person who ... would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured,...." (Emphasis added.)

personal representative of the estate of her deceased husband for injuries sustained by her as a result of tortious conduct by her husband during coverture, the dismissed count in the instant case states a cause of action.

This brings us to *Ebel*, 478 S.W.2d 334, decided some 14 years after *Ennis*. In *Ebel*, a wife, while a passenger in an automobile operated by her husband, was injured when the automobile collided with another vehicle. The wife and husband were divorced several months later. Some two and a half years after the divorce, the ex-wife sued her ex-husband for her injuries. The trial court granted the ex-husband's motion for summary judgment, and the ex-wife appealed.

The Supreme Court of Missouri, in an opinion authored by one judge and concurred in by two others (henceforth referred to as "the principal opinion"), stated:

"The question presented is whether, after divorce, a former wife may recover damages from her former husband for a wrongful act committed during marriage." *Id.* at 334.

The principal opinion then discussed the origin and development of the rule that a wife could not maintain a civil action against her husband for a wrongful act committed by him against her during coverture. The principal opinion concluded that in Missouri, by reason of the common law concept of "unity of the spouses," no cause of action came into existence as the result of the commission of a wrongful act by one spouse against the other. Consequently, said the principal opinion:

"The *Ennis* case reached an incorrect result, in permitting recovery, because the wrongful act involved was committed during the marriage, and no cause of action came into existence during the marriage. The death of the husband could not create a cause of action in the widow when none existed before the death." *Id.* at 336.

Two judges in *Ebel*, in a separate opinion, concurred in the *result* on the ground that the suit there should be barred on public policy grounds. Their opinion, in pertinent part, said:

" ... most all of the ever increasing number of divorce cases are resolved by court decrees wherein consideration is given to property settlements, alimony and child support based on the financial status of the parties; and, to allow the action now in question, would tend to shatter the bases of all such divorce decrees and open the door to a vindictive rehash of marital difficulties presumably settled by such decrees.

Second, [we] cannot conceive of any necessity or advantage to litigants or the courts, which resolve their conflicts, in returning to the rigidity of the concept of 'unity of the spouses.' A review of the decisions cited in the principal opinion reflects the considered thought given the problem through the years by this court, and to [us] they appear to have met the needs of a modern day society within the legal principles therein announced." *Id.* at 339.

The other two judges in *Ebel* dissented, stating that the case should be decided on the same basis as *Ennis*, and that it should be remanded for trial on the merits. *Id.* at 339.

■ *Moore v. Brown*, 350 Mo. 256, 165 S.W.2d 657, 660–61[3] (banc 1942), squarely holds that where a principal opinion of the Supreme Court of Missouri has the full concurrence only of its author and two other judges, another judge concurring only in the result, and three judges dissenting, it is binding only as to the result reached therein, and does not overrule prior inconsistent decisions.

That rule was followed in *Wilcox v. Coons*, 359 Mo. 52, 220 S.W.2d 15, 20–21[7] (banc 1949), and in *Musgraves v. National Dairy Products Corp.*, 400 S.W.2d 93, 96[2] (Mo.1966), where it was contended that an earlier decision had been overruled by a later one. On that issue, *Musgraves* said:

"However, [the later] opinion had only the full concurrence of its author and

two other judges—the other four judges concurring only in the result. It obviously was not authoritative except as to the result reached therein and could not have overruled any prior decisions."

*State v. Smith*, 422 S.W.2d 50, 70[45] (Mo. banc 1967), *cert. denied*, 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 176 (1968), expresses the same principle thusly:

"Where a majority of a multi-judge court arrive at the same general result but for different reasons—where it does not appear that a majority of the court agreed as to the reasoning or as to a particular ground of the decision—the case cannot be considered as authority on the point concurred in by some but less than a majority."

Applying *Moore, Wilcox, Musgraves,* and *Smith*, we hold that *Ebel* did not overrule *Ennis*. The principal opinion in *Ebel*, as we read it, says that no cause of action ever came into existence in *Ennis* because the husband's negligence occurred during the marriage, thus after his death his widow had no claim that she could assert against his administrator.

As we have seen, however, *Ebel* was a suit by an ex-wife against her ex-husband for a negligently inflicted injury sustained by her during their marriage. *Ebel* thus differed from *Ennis*, a suit by a widow against the administrator of the estate of her deceased husband for injuries allegedly caused by the deceased's negligence. The two judges who concurred in the result in *Ebel*—but not in the principal opinion there—did so not on the basis that no cause of action ever came into existence, but on the public policy ground that to allow such a suit after the divorce would encourage resurrection of claims presumably settled by the divorce decree. Those two judges specifically rejected a return to the concept of unity of the spouses, the foundation of the rule that no cause of action can arise from the commission of a wrongful act by one spouse against the other. We therefore conclude that although the principal opinion in *Ebel* stated that *Ennis* reached an incorrect result, *Ebel* did not overrule

*Ennis*, as the principal opinion in *Ebel* had the concurrence only of its author and two other judges. The two judges who concurred only in the result in *Ebel*, as we understand them, had no intention of overruling *Ennis*. Consequently, in our view, *Ennis* is still viable, and is dispositive of the instant appeal.

In saying this, we are mindful that in *Klein*, 513 S.W.2d at 717, the Kansas City District of the Court of Appeals found that *Ennis* had been overruled by *Ebel*. It is inferable, however, that the principles of *Moore, Wilcox, Musgraves,* and *Smith* were not argued to the court in *Klein*, and were therefore not considered in reaching that decision. They are nowhere mentioned in the opinion. Be that as it may, we are bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, § 2 (1945); *Estate of Seabaugh*, 654 S.W.2d 948, 957[4] (Mo.App. 1983). As we see it, that decision is *Ennis*.

The facts in the case before us are even stronger than *Ennis* on the issue whether a cause of action can be maintained. In *Ennis*, as we have said, the suit was by the widow against the administrator of her deceased husband's estate. In the instant case, the suit is by the children of the deceased victim, and against the personal representative of the estate of the victim's deceased husband. The children were not legally related to the victim's late husband.

There is obviously no public policy that would prohibit the plaintiffs in the instant case from suing defendant for the death of the victim. The only possible bar would be that no cause of action ever arose because the victim was married to John Rymer at the time he allegedly caused her death. *Ennis* rejected that concept and, as we have said, *Ennis* is the case that applies here.

The order of the trial court dismissing the wrongful death count did not set out the reason for the dismissal. The record, however, shows that after plaintiffs filed their petition, defendant filed a motion to dismiss all counts on the ground that they failed "to state a claim upon which relief

can be granted." The order dismissing the wrongful death count states only that the motion to dismiss such count "is sustained." We can conceive no basis for the dismissal except that the trial court believed that by reason of the doctrine of interspousal immunity, no cause of action for the victim's death ever arose. *Ennis*, as we have explained, compels us to hold otherwise.

Another basis for reversal is arguably supplied by *Nebbitt v. Nebbitt*, 589 S.W.2d 297 (Mo. banc 1979), although we need not base our holding on that case. There, a husband, in an action for dissolution of marriage commenced by his wife, filed a multi-count cross-petition, one count of which averred that the wife had converted the husband's separate personal property during the marriage. The trial court dissolved the marriage on the husband's cross-petition, but dismissed the count for conversion as failing to state a cause of action. On appeal, five judges agreed that the conversion count stated a cause of action, as the doctrine of interspousal tort immunity did not apply where the tort involved is conversion of a spouse's separate property. *Id.* at 300. While that holding would not appear to overrule *Ebel*, the author of the principal opinion in *Ebel*, dissenting in *Nebbitt*, said:

"In my view, the principal opinion effectually overrules *Ebel* ... insofar as *Ebel* ... bases the doctrine of interspousal tort immunity on 'the common law concept that a wrongful act between spouses does not give rise to a cause of action.'" *Nebbitt*, 589 S.W.2d at 301.

*Nebbitt*, if it did overrule *Ebel* in that respect, would permit the wrongful death count in the instant case, as *Nebbitt* was decided five years before the victim's death at the hands of John Rymer.

Our opinion would not be complete without mentioning another development in this area of the law. In *Townsend v. Townsend*, 708 S.W.2d 646, 649[1] (Mo. banc 1986), the doctrine of interspousal immunity was abrogated as to "intentional tort actions" by one spouse against the other. Another case, *S.A.V. v. K.G.V.*, 708 S.W.2d 651 (Mo. banc 1986), decided the same day as *Townsend*, purported to eliminate interspousal immunity as a bar to an action in which a wife alleged that during her marriage, her husband *negligently* transmitted a disease to her. The principal opinion in *S.A.V.*, however, had the concurrence of only two judges in addition to its author. Another judge concurred, but expressed no belief as to what the holding should be if the injured spouse permitted the marriage to be dissolved without mentioning the tort claim. Two judges stated they would not allow the wife to sue for negligent transmission of the disease. One judge, the author of the principal opinion in *Ebel*, dissented.

For the reason that follows, we shall not endeavor to apply *S.A.V.* to the instant case. (*Townsend* would have no bearing on the instant case, as *Townsend* involved an intentional tort—an alleged shooting with intent to seriously injure or kill—while the shooting of the victim in the instant case is alleged to have been done "negligently and recklessly.") Both *Townsend* and *S.A.V.* state:

"Our holding today shall be applicable to all actions in which a final order, decree or judgment has not been entered as of the date of issuance of this opinion." *Townsend*, 708 S.W.2d at 650[4]; *S.A.V.*, 708 S.W.2d at 653.

*Townsend* and *S.A.V.* were issued April 15, 1986, while the instant appeal was pending.[2] It might therefore be argued that no "final" order, decree or judgment had been entered regarding the wrongful death count in the instant case when those decisions were issued. We need not, however, decide that question, as we have already concluded that the wrongful death count is viable by reason of *Ennis*.

**2.** The order of the trial court dismissing the wrongful death count, from which this appeal is taken, was entered January 16, 1986.

■ We turn now to the matter of appealability of the order dismissing the wrongful death count. *Crenshaw*, 527 S.W.2d 1, cited by plaintiffs, was a suit in three counts against an insurance company, seeking recovery under the uninsured motorist provision in an insurance contract. One count arose from the death of a child of two of the plaintiffs. The trial court ordered that count dismissed on the ground that the cause of action had been extinguished because suit had not been filed within two years after the death, and, consequently, the plaintiffs could not establish that at the time the suit was commenced, they were legally entitled to recover damages from the owner or operator of the uninsured vehicle. The trial court did not designate the order of dismissal as final for purposes of appeal. The appellate opinion, observing that the disposition of the remaining counts was not dependent in any respect upon the disposition of the dismissed count, held the order appealable. The lack of dependency, said the court, was emphasized and pointed up by the fact that the final disposition of the dismissed count was because the claim had been extinguished by limitations. *Id.* at 3. Disposition of that count on that basis could not affect the disposition of the two remaining counts.

The same analysis was applied in *Luecke v. Missouri Department of Conservation*, 674 S.W.2d 691 (Mo.App.1984), where two landowners sued the Department of Conservation and two individual defendants, alleging that the combined negligence of all three defendants poisoned the landowners' lake. The trial court entered summary judgment in favor of the Department on the ground that it enjoyed sovereign immunity from tort liability. The judgment made no disposition of the claims against the two individual defendants. The appellate opinion held that the entry of summary judgment in favor of the Department constituted a separate trial of a claim by the court without a jury, within the meaning of Rule 81.06. As to whether the judgment was appealable, the opinion, citing *Crenshaw*, stated:

"A judgment disposing of a claim arising from the same factual predicate as other claims in the action is to be automatically deemed final if the remaining claims or counts are independent of the claim on which judgment is entered. The test, therefore, is one of dependency. So long as the remaining claims are not 'dependent in any respect upon the outcome of or final disposition of' the judgment rendered, that judgment is final without need for the trial court to so designate." *Luecke*, 674 S.W.2d at 692[1].

The defense of sovereign immunity was a defense unique to the Department. Recognizing that defense as a bar to the landowners' claim against the Department had no effect on the landowners' claims against the individual defendants. Thus, summary judgment in favor of the Department was appealable. *Id.* at 692.

■ Applying *Crenshaw* and *Luecke*, we hold that the trial court's order dismissing the wrongful death count in the instant case is appealable, despite the fact that the other three counts of plaintiffs' petition remain unadjudicated. It is evident that the trial court dismissed the wrongful death count on the ground that it failed to state a claim upon which relief could be granted. The disposition of that count on that basis could not affect the disposition of the three remaining counts, which were not brought under the wrongful death statute, and hence did not involve the matter of interspousal immunity.

Having determined that the order is appealable, and that the wrongful death count states a cause of action, we reverse the order dismissing that count and remand that count to the trial court for further proceedings.

GREENE, P.J., and JAMES PUDLOWSKI, HAROLD L. LOWENSTEIN, ROBERT G. DOWD, Jr., and DEAN WHIPPLE, Special Judges, concur.

TITUS, J., not participating.