**John RUSTICI, Sr., Plaintiff-Appellant,**

v.

**Richard WEIDEMEYER, et al., Defendants-Respondents.**

**No. 65672.**

Supreme Court of Missouri, En Banc.

June 19, 1984.

On Rehearing July 17, 1984.

fendants on his petition for false arrest and malicious prosecution arising out of the issuance and nonpayment of a parking violation on a shopping center parking lot.

Plaintiff filed suit for false arrest against two officers on the Kansas City police force, one of whom was employed as a private security guard during off-duty hours by the Metro North Shopping Center. The action for false arrest included the owners of the shopping center. In his comprehensive cause of action, plaintiff also charged the security guard and shopping center officers with malicious prosecution. The suit further asserted a claim under 42 U.S.C. § 1983 (1976) against the two police officers and the City of Kansas City for alleged deprivation of civil rights.

The trial court granted defendants' motion for directed verdict, and on appeal, the Western District of the Court of Appeals affirmed. This court granted transfer. Considering the case as an original appeal, Rule 83.09, we affirm in part and reverse in part.

At the outset, it should be specifically noted that this case turns on the necessity of a warrant by a municipal police officer making an arrest outside his jurisdiction for a violation of a municipal parking ordinance under the particular circumstances presented. The primary holding of this case deals only with municipal ordinance violation and arrest pertaining to such.

■ The panoramic question presented by this appeal is whether the trial court erred in directing a verdict in favor of defendants at the close of plaintiff's evidence. It follows that this Court must consider the evidence and all the reasonable inferences therefrom in the light most favorable to plaintiff in order to determine whether plaintiff made a submissible case against any of the defendants under any of the theories presented in his petition. *National Garment Co. v. City of Paris*, 655 S.W.2d 515, 516 (Mo. banc 1983).

Plaintiff's arrest came about as the result of a parking ticket issued by an off-duty Kansas City police officer, Steven He-

Ed Dougherty, G. Spencer Miller, Kansas City, for plaintiff-appellant.

Kenneth O. Smith, James Welsh, Aaron A. Wilson, Michael W. Bradley, Jeffrey Hess, William Randall Williams, Thomas B. Sullivan, III, Manfred Maier, Kansas City, for defendants-respondents.

GUNN, Judge.

Plaintiff-appellant appeals from the trial court's directed verdict in favor of all de-

bauf. Officer Hebauf was working as a security guard for Metro North Shopping Center, and his duties included issuing tickets to illegally parked vehicles which were blocking fire lanes. One such ticket was issued on April 13, 1979 to a two-door Chevrolet. On the face of the ticket, Hebauf wrote down a description of the vehicle, including the license tag number, as well as the number of the ordinance which had been violated. Plaintiff does not contend that any of this information was erroneous, but he does base his case in large measure on the fact that Hebauf did not fill in the name of the owner of the vehicle.

Under standard operating procedure, presumably followed in this case, a copy of the ticket was left on the vehicle and another copy was sent to the Kansas City municipal court. There, employees of the Court Administrator's office attempted to discover the name of the owner of the vehicle through a search of the computer records of the Department of Revenue. Two such attempts were made, both of which were unproductive. However, a subsequent inquiry to the motor vehicle bureau in North Kansas City was more successful. On the basis of information supplied by that office, the name "John Rustici" and the address "1103 N.E. Cowden, Gladstone, Mo." were added to the ticket. All of the information pertinent to the ticket was placed in the computer files of the municipal court.

A check of the computer records of the Department of Revenue prior to trial revealed two licensed drivers having the name John Rustici, one born in 1924 and the other born in 1959. The two Rusticis were father and son, and each resided at the same Gladstone address. These computer records were available to the computer section of the Municipal Court Administrator's office, and one of the employees of that section apparently entered "1924" in the computer as the birthdate of the John Rustici named in the parking ticket. The computer employed by the municipal court is programmed to automatically generate an entry stating that a warrant has issued with respect to a given parking ticket when that ticket has remained unpaid for a certain length of time.

On September 23, 1979, by happenstance Gladstone police officers were called to investigate some acts of vandalism at Mr. Rustici's house. A routine check revealed to Gladstone police that John Rustici was the subject of a Kansas City warrant for an unpaid parking violation, and plaintiff was informed of that fact. The Gladstone police contacted the Kansas City police, and defendant Richard Weidemeyer, a Kansas City police officer, was dispatched to the scene. Upon Weidemeyer's arrival, plaintiff informed him that a mistake had been made, that he did not drive a car fitting the description on the parking ticket and that he and his son bore the same name. The officer did not talk to any other member of plaintiff's family but did check to determine that the warrant was issued to a John Rustici born in 1924.

Mr. Rustici was taken to a Kansas City police station where he posted a $25.00 appearance bond and was released. The case against him was ultimately dismissed, and he brought this action.

Plaintiff's second amended petition is in three counts. Count I asserts a claim of false arrest against the owners of the shopping center and the two Kansas City police officers, Hebauf and Weidemeyer. Count II pleads a cause of action for malicious prosecution against the same defendants. Count III seeks to hold the two police officers and the city of Kansas City liable for depriving plaintiff of his civil rights under § 1983, *supra.* The trial court directed a verdict at the close of plaintiff's case in favor of all defendants on all counts.

■ As a preliminary point, plaintiff contends that the trial court erred in directing a verdict in favor of the shopping center owners and the police officer (Hebauf) employed by them on Counts I and III, arguing that these defendants failed to request a verdict on those counts in their motion. The only authority cited by plaintiff for this proposition is Rule 72.01, which states in pertinent part that "[a] motion for directed verdict shall state the specific grounds

therefore." Nothing in Rule 72.01 prohibits a trial court from entering a directed verdict without motion when it is merited. The authority of trial courts to direct a verdict where there is no material issue of fact for the jury to decide "is part of the inherent power of the court, which is charged with the duty of determining questions of the law." *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1155 (banc 1936). The general rule which we follow is that a trial court "may, in a proper case, direct a verdict at its own instance without any request therefor having been made by either party." 88 C.J.S., *Trial* § 249 (1955).

With respect to the merits, plaintiff contends that a submissible case of false arrest was made against the shopping center owners and the officer employed by them. Plaintiff's case is, of course, founded on the effect that the issuance of the parking ticket had on the fact of his ultimate arrest. Plaintiff places much emphasis on his argument that the issuance of the ticket served to "instigate" that arrest. However, this argument is misdirected.

 The essence of the cause of action of false arrest, or false imprisonment, "is the confinement, without legal justification, by the wrongdoer of the person wronged." *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo.1969); *Patrich v. Menorah Medical Center*, 636 S.W.2d 134, 138 (Mo.App.1982). A person may also be liable for false arrest if he does not actually confine the plaintiff but merely instigates it, as in the case of providing information on the basis of which a subsequent unlawful arrest is made. *See, e.g., Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848 (Mo. banc 1975); *Snider v. Wimberly*, 357 Mo. 491, 209 S.W.2d 239 (1948). However, justification is a complete defense to the cause of action, and this applies equally as well to the person who merely instigates an arrest as to one who actually effectuates it. In the former context it has been held that "[i]f one merely states the facts to an officer, leaving it to him or his superior to act or not as they see fit, he is not liable for a false arrest

made by the officer." *Greaves v. Kansas City Junior Orpheum Co.*, 229 Mo.App. 663, 80 S.W.2d 228, 237 (1935); *accord, Vimont v. S.S. Kresge Co.*, 291 S.W. 159, 160 (Mo.App.1927).

 While such a rule is more commonly addressed to the question of whether certain conduct rose to the level of instigation, there is within the statement the germ of another rule: a person may not be held liable for stating the truth to one who ultimately effects another's arrest. *See Vimont.* There can be no better, nor more complete justification for someone alleged to be the instigator of an arrest than that he simply told the truth. In this case, the officer (Hebauf) who issued the ticket did no more than report a true description of an illegally parked car to those whose power and authority it was to enforce the infraction against the party properly responsible. He did not identify the offending party, and he certainly did not attempt to distinguish the elder Rustici from the younger. Nothing in plaintiff's evidence detracts from this conclusion that the acts of Officer Hebauf were justifiable and that he bears no liability.

 It follows that if the officer issuing the ticket is not liable for false arrest, then clearly neither are his employers who are sought to be held liable under the theory of *respondeat superior. Lynch v. Hill*, 443 S.W.2d 812, 818 (Mo.1969); *Vaughn v. Sears Roebuck & Co.*, 643 S.W.2d 30, 33 (Mo.App.1982).

 Closely related to plaintiff's claim against these defendants for false arrest is his claim against them for malicious prosecution. Among the elements of a cause of action for malicious prosecution is that defendant initiated (or continued) the prosecution without probable cause. W. Prosser, *The Law of Torts*, § 119 at 841 (4th ed. 1971). Like false arrest, there is no liability for malicious prosecution based on reporting the truth. *See Pride v. Lamberg*, 366 S.W.2d 441, 445 (Mo.1963).

■ Under the facts as recited, plaintiff made no case against Officer Hebauf or his shopping center employers.

Plaintiff's fourth point urges that a submissible case of false arrest was made against Officer Weidemeyer. Plaintiff contends that his arrest by Officer Weidemeyer was unlawful in the following three respects: first, that the arrest was without a warrant, since the computer-generated entry which precipitated his arrest was not issued under the hand of a judge or clerk of the Municipal Court in accordance with Rule 37.10; second, that plaintiff's arrest was effectuated by a Kansas City police officer in a location outside his jurisdiction; and third, that Officer Weidemeyer failed to take reasonable precautions to avoid a mistake in identity. Presumably, the incipient illegality of plaintiff's arrest under this latter theory is that plaintiff was not the party properly responsible for the parking citation.

Defendant Weidemeyer contends that summary disposition as to him was proper, in that he did not actually "arrest" plaintiff but merely transported him following the arrest by Gladstone police officers. Weidemeyer further contends that his restraint of plaintiff under the auspices of a computer-general warrant was lawful, in that such procedure has been approved by the judges of the Municipal Division of the Sixteenth Judicial Circuit. He also argues that he is shielded from liability by the doctrine of sovereign immunity. As a final defensive revetment, he contends that a directed verdict in his favor was proper, based on the principle that an arresting officer may justifiably rely on a warrant which is valid on its face.

■ In response to Officer Weidemeyer's first contention, it is of no moment whether he was the first person to actually effect plaintiff's arrest or whether he merely detained plaintiff following his arrest by the Gladstone police officers. In *Parrish v. Herron*, 240 Mo.App. 1156, 225 S.W.2d 391, 399 (1949), it was held that a sheriff's deputy who was present while a state Highway Patrol officer interrogated, arrested and transported the plaintiff was liable along with the trooper for false imprisonment. As the court there stated, "all persons who directly procure, aid, abet, or assist in an unlawful imprisonment are liable as principals." *Id., quoting Hines v. Fireman's Fund Ins. Co.*, 235 S.W. 174, 176 (Mo.App.1921). It was earlier stated that, even though a plaintiff may have been arrested without the defendant's knowledge or consent, "yet if the illegal restraint continue by and with the direction, advice and assistance of such party, then he is liable for false imprisonment." *Monson v. Rouse*, 86 Mo.App. 97, 101 (1900). Even if Weidemeyer served as no more than a jailer, a jailer is liable for false imprisonment if he knows or should know that an arrest was illegal and that he has no right to imprison the person arrested. 32 Am.Jur.2d, *False Imprisonment*, § 41 (1982).

■ If plaintiff's arrest was unlawful, there is no doubt that Officer Weidemeyer was fully apprised of the circumstances that rendered it so, and his subsequent detention of plaintiff would therefore be as maculated as would have been an initial arrest by him.

■ Defendant's second point requires little discussion. The judges of the Municipal Division of the Sixteenth Judicial Circuit are not empowered to adopt procedures which will validate an arrest that is otherwise unlawful. It is therefore irrelevant that the manner in which plaintiff was arrested, based on transmitted information regarding a computer-generated warrant, was approved by the Municipal Court.

■ Defendant's third point is also without merit. Although Officer Weidemeyer claims the protection of sovereign immunity, that principle is uniquely applicable to governmental entities and is not transferrable to an agent of that entity. *Newson v. City of Kansas City*, 606 S.W.2d 487, 490 (Mo.App.1980); *see also Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 294 (Mo.App.1983) (sovereign not protected by official immunity). A pub-

lic officer, however, has an official immunity from liability for discretionary acts or functions performed in the exercise of official duties. *Oberkramer*, at 295; *Newson*, at 490; *Jackson v. Wilson*, 581 S.W.2d 39, 42 (Mo.App.1979).

▮ The issue in the present case, then, is whether the conduct of Weidemeyer sought to be redressed by plaintiff's petition was so cloaked with official discretion that plaintiff may not recover as a matter of law. The test for determining the discretionary nature of an act is whether that act necessarily requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Jackson*, at 43, *citing* 62 C.J.S., *Municipal Corporations*, § 545 (1949).

In contrast, a ministerial function, the exercise of which is not immune, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Jackson*, at 43; *accord, Yelton v. Becker*, 248 S.W.2d 86, 89 (Mo.App.1952). With all due appreciation of the practical difficulties encountered in the application of this distinction, it is nevertheless difficult to conceive of an act which is more circumscribed by law, and less susceptible to individual initiative, than is the arrest of a citizen by a peace officer. At the very least, plaintiff's evidence gives rise to a reasonable inference that the acts of Weidemeyer that are complained of are ministerial and therefore not shielded by official immunity. *See Newson*, at 491.

▮ The substance of defendant Weidemeyer's fourth contention is that an officer may successfully defend against a claim of false arrest by showing that he acted reasonably in making the arrest and that the reasonableness of defendant's actions in the instant case are established as a matter of law. The argument suggested is actually an attempted synthesis of two distinct principles. The first is that an arresting officer, when executing a warrant that is later determined to be invalid, may nevertheless be justified in making the arrest if the warrant is "fair and valid on its face." *Wehmeyer v. Mulvihill*, 150 Mo. App. 197, 130 S.W. 681, 684 (1910); *accord, Zeitinger v. Mitchell*, 244 S.W.2d 91, 97 (Mo.1951). A logical corollary to the first principle, as yet unaddressed by Missouri courts, is that an arresting officer, in a case of mistaken identity, may justifiably rely on a description contained in a warrant which he is directed to execute unless he has reason to know that the person arrested was not intended to be the subject of that warrant. *See* Annot., 127 A.L.R. 1057, 1058 (1940); 10 A.L.R.2d 750, 752 (1950).

▮ The second principle is that if an officer is empowered to make an arrest without a warrant, the arrest of an innocent person may be justified by the officer's reasonable belief that the person is guilty of the offense for which he was arrested. *Wehmeyer*, 130 S.W.2d at 684.

▮ Before applying these principles to the case at hand, it is necessary to isolate the two claimed infirmities in plaintiff's arrest. The first is that plaintiff was mistakenly identified as the person whose arrest was sought. This infirmity may truly be said to be cured by the officer's reliance on information which directly identified plaintiff and which he had no reason to disbelieve. The second infirmity is that plaintiff was arrested without a warrant under circumstances in which a warrant was required. If these two premises are true, then the officer's mere belief, based upon second-hand information, that a valid warrant existed will not justify the arrest. This conclusion follows, regardless of the apparent reliability of that information.

▮ In order to reach this conclusion, however, the premises on which it is based must be proven. The first, in turn, is that plaintiff's arrest required a warrant. It is the general rule that for an arrest to be lawful, it must be in execution of a valid warrant; however, an officer "may arrest without a warrant any person whom he has

reasonable cause to believe has committed a felony and anyone committing a misdemeanor in his presence." *Kansas City v. Mathis*, 409 S.W.2d 280, 286–87 (Mo.App. 1966). The warrant requirement is also subject to certain statutory exceptions, none of which is pertinent here.

■ Section 544.215, RSMo 1978, authorizes *police officers of municipalities in St. Louis County, St. Louis County police and St. Joseph City police* to "arrest any person whom [they have] reasonable cause to believe is committing or has committed a misdemeanor." Section 84.710, RSMo 1978, empowers police officers in Kansas City to arrest any person "whom they have reason to suspect of having violated any law of the state or ordinance of the city." That power exists, however, only within the city itself or on public property of the city beyond its corporate limits. In addition, § 544.216, RSMo Cum.Supp.1983, effective September 28, 1983, authorizes sheriff's officers and certain municipal police officers to arrest any person whom they have reasonable cause to believe "has violated any ordinance over which such officer has jurisdiction." None of these sections authorized either the Gladstone police or the Kansas City police to effect a warrantless arrest on September 23, 1979, in Gladstone, Missouri, based on reasonable suspicion that the person arrested has violated a municipal ordinance.

The second premise to be considered is that plaintiff was arrested without a warrant. In the present case, plaintiff made a *prima facie* showing that his arrest was not accomplished under the auspices of a valid warrant. This conclusion is dictated by Rule 37.10, governing the issuance of warrants in traffic cases. Rule 37.10 states, in full, as follows:

Any warrant issued upon a complaint or information charging the commission of an offense may be issued under the hand of the judge of the court issuing same, or of the clerk thereof if authorized by law, if the complaint or information is filed by the prosecutor. It shall contain the name of the accused or, if his or her name is unknown, any name or description by which the accused can be identified with reasonable certainty. It shall describe the offense charged in the complaint or information. If such warrant is issued under the hand of the judge, it need not be sealed, but if it is issued under the hand of the clerk of the court, the seal of the court, if such court has an official seal, shall be attached thereto.

■ Plaintiff's evidence described the standard operating procedure of the Kansas City Municipal Division relative to unpaid parking tickets. After a parking ticket remains unpaid for a particular length of time, a computer is programmed to generate a notation that a warrant has issued with respect to it. This information is then made available to law enforcement personnel. The evidence also shows that both the Gladstone police and Officer Weidemeyer relied on radio information concerning the existence of a warrant when they arrested plaintiff. A reasonable inference from this evidence is that the "warrant" in the present case was in fact no more than a calendaring device to remind the court clerk that a warrant should be issued. It is certainly clear that such an entry does not require either a municipal court judge or a court clerk to give even the briefest attention to whether a warrant should issue in a given case in light of the facts which might then exist to justify its issuance. Rule 37.10 contemplates such attendance at the time of issuance. Furthermore, it seems clear that Rule 37.10, in the absence of other more specific authority to the contrary, contemplates a written document capable of being either signed or sealed. *See also*, § 544.180, RSMo 1978, requiring that an arresting officer must show a warrant under which he acts.

Having concluded that the two premises referred to above are true, it remains to be shown that an arresting officer, in such circumstances, may not justifiably rely on second-hand information that an applicable warrant existed. Our conclusion is pecu-

liarly informed by the particular circumstances of this case.

▮▮▮ Rule 37.12, pertaining to certain municipal traffic warrants, states that an officer executing such a warrant "need not have the warrant in his possession at the time of his arrest but upon request he shall show the warrant to the accused as soon as possible." Similar language appears in the rules relative to warrants for misdemeanors (Rule 21.08) and for felonies (Rule 22.-05). It certainly follows that if, under the present circumstances, the arresting officer need not have possessed the warrant in order to validly execute it, then the officer would have been justified in relying on a radio communication to the effect that a valid warrant existed.[1] In that case, the rule of "facial validity" referred to above could be extended to include "second-hand facial validity." Such an arrest would have every appearance of legal sanction, so long as it was based upon a reasonable belief that a proper warrant charging the plaintiff had been issued. However, if the officer was required to have the warrant in his possession, it cannot be said that reliance on hearsay information of the warrant's existence provides the necessary justification. A closer examination of Rule 37.12 and of the general law of arrest results in the conclusion that Weidemeyer was indeed required to possess the warrant.

Rule 37.12, by its terms, does not apply to warrants "issued under Rule 37.48." That rule, in turn, applies to warrants issued for failure to appear and answer a traffic ticket, including a parking ticket. *Id.* The warrant in the instant case is precisely within the ambit of that rule and is therefore not covered by the possessory exemption in Rule 37.12.

▮▮▮ Without such an exemption, the general rule is that an officer must possess the warrant in order to validly execute it. J. Scurlock, *Arrest in Missouri,* 29 U.M.K.C. Law Rev. 117, 162 (1961); E. Fisher, *Laws of Arrest,* § 54, at 114, 115 (1967). This rule is recognized by the requirements in § 544.180, *supra,* that an arresting officer "must inform the defendant by what authority he acts, and must also show the warrant if required."[2] A clear prerequisite to the officer's ability to display the warrant to a person being arrested is the officer's possession of that warrant.[3]

▮▮▮ Since the officer arresting plaintiff was required to be in possession of the warrant, neither Officer Weidemeyer nor the Gladstone police could have justifiably relied on the appearance of authority to arrest which did not result from first-hand, or possessory knowledge of that document. It follows that Officer Weidemeyer's conduct, whether it constituted an arrest or merely continued detention, did not constitute justifiable imprisonment as a matter of law. We therefore conclude that the trial court erred in directing a verdict in favor of defendant Weidemeyer on plaintiff's claim of false arrest.

▮▮▮ Despite the submissibility of plaintiff's cause of action for false arrest against Officer Weidemeyer, we must nevertheless conclude that the trial court properly disposed of plaintiff's claim for punitive damages. In order to award punitive damages in a case of false arrest, a jury must find that the defendant not only intended the confinement but knew it to be

---

1. It bears noting that the provisions of Rule 37.12 would have justified a non-possessory arrest only if the arrest had actually been effected by Gladstone police officers since that rule, unlike Rule 37.48, permits the execution of warrants only by police officers of the jurisdictions in which they are executed.

2. In *State v. Bateswell,* 105 Mo. 609, 16 S.W. 953, 955 (1891), this Court approved an instruction in a prosecution for assault on an arresting officer which allowed the jury to find that the

officer had the right to arrest defendant even if the officer had not brought the warrant with him at the time of the arrest. The holding of this case is properly confined to the question of the circumstances which justify resistance to arrest.

3. In view of our holding, we have no occasion to decide whether the more lenient possession provision in Rule 37.12 prevails over the statutory edict.

unlawful at the time it occurred. *Dorris v. Zayre Corp.*, 619 S.W.2d 326, 328 (Mo.App. 1981). The law will imply such knowledge, however, where the defendant acts with reckless disregard or conscious indifference of the rights or interests of another. *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 723 (Mo.1966); *Pashalian v. Big–4 Chevrolet Co.*, 348 S.W.2d 628, 637 (Mo.App.1961). In the present case, there is nothing in plaintiff's evidence which suggests that Officer Weidemeyer had any conscious doubt concerning the lawfulness of plaintiff's arrest, at least with regard to the technical requirements which rendered the arrest unlawful. At most, his was an unreasonable, yet good faith, belief in the validity of a standard practice employed in cases of unpaid parking tickets. This good faith mistake as to the legality of his act is sufficient to negate the legal malice required for the imposition of punitive damages. *Pollock v. Brown*, 569 S.W.2d 724, 733 (Mo. banc 1978). Absent further evidence of reckless or conscious disregard of plaintiff's rights on the part of Officer Weidemeyer, the directed verdict as to punitive damages must be affirmed.

■ Plaintiff's fourth point is that a submissible case was made against Officer Hebauf (the officer employed by Metro North Shopping Center) and against Officer Weidemeyer under 42 U.S.C. § 1983 (1976) for deprivation of constitutional rights. Section 1983 has been held to provide redress for wrongful arrest. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Giordano v. Lee*, 434 F.2d 1227 (8th Cir.1970). However, no cause of action is stated if a warrantless arrest is lawful. *Tyler v. Peterson*, 315 F.Supp. 338 (E.D.Mo.1970). We have already held that the actions of Officer Hebauf, however they may have contributed to plaintiff's arrest, were lawful. Plaintiff has not shown a right to recover against Hebauf as a matter of law.

■ The same cannot be concluded with respect to Officer Weidemeyer. Plaintiff has at least made a submissible case that his arrest (or detention) by that officer was unlawful. In its opinion affirming the trial court, the Western District concluded that Officer Weidemeyer's conduct amounted to negligence at most, and that negligence could not support an action under § 1983. While some confusion existed on this point at one time, it now appears settled that § 1983 does not require that the deprivation complained of have been committed with "a specific intent to deprive a person of a federal right." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Liability of a police officer is not unlimited, however. Public officials are provided a qualified immunity for their official acts "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).[4] We cannot state, as a matter of law, that a reasonable person in the position of Officer Weidemeyer would have been unaware that his conduct in arresting plaintiff was unlawful. At least plaintiff's evidence raises a jury question as to this point. Consequently, we hold that the directed verdict as to this defendant was erroneous.

■ However, the directed verdict was erroneous only with respect to plaintiff's claim for actual damages. Under § 1983, punitive damages are recoverable for deprivations of constitutional rights committed with reckless or callous disregard for those rights. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). Nevertheless, we have already concluded that plaintiff's evidence does not demonstrate reckless disregard on the part of Officer Weidemeyer. The directed verdict as to punitive damages against Officer

---

**4.** It is unclear whether public officials who perform merely ministerial functions must also prove a subjective belief in the lawfulness of their conduct. *See Harlow,* 457 U.S. at 816, 102 S.Ct. at 2738, *et seq.* However, resolution of this question is unnecessary in the present case.

Weidemeyer under this theory must also be affirmed.

■ Plaintiff's final point challenges the directed verdict entered in favor of the city of Kansas City on his § 1983 claim. Plaintiff's claim is that the city owned, and through its employees operated, the computer files into which false information was placed which identified plaintiff as the owner of the ticketed automobile. This theory does no more than assert liability for a deprivation of constitutional rights based on the acts of its agents. However, a municipality may not be held liable under § 1983 solely on a theory of *respondeat superior. Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Liability under that section must be grounded upon injuries resulting from the implementation of "official policy" or "governmental custom." *Id.,* 436 U.S. at 690, 691, 98 S.Ct. at 2035, 2036. Nothing in plaintiff's evidence indicates that it was either the policy or custom of the city of Kansas City to cause traffic warrants to be directed to parties who were not legally responsible therefor. Consequently, the directed verdict as to the city must also be affirmed.

The ultimate holding of this case as to Officer Weidemeyer's determined liability is extremely narrow, for he is caught in some exceptionally limited circumstances. What catches him is this: he is a Kansas City police officer making an arrest or taking custody of a person outside his jurisdiction for a municipal traffic ordinance violation. Since it took place outside Kansas City, he is not covered by the exception to the warrant requirement for Kansas City police in § 84.710, *supra,* nor is there a

comparable statutory exception applicable to the Gladstone police. And, since it took place prior to September 28, 1983, he is not covered by the exception to the warrant requirement in § 544.216, *supra.*[5] The further telling circumstance is that he failed to possess a piece of paper giving the appearance of a valid warrant while making an arrest for failure to appear and answer a municipal traffic ticket. Unfortunately for Officer Weidemeyer, all these little details conspired against him to produce the result in this case.

As noted at the outset of this opinion, the holding of this case pertains only to the circumstances of this case as they relate to a warrantless arrest by a Kansas City municipal police officer outside his jurisdiction and involving only a municipal traffic ordinance violation.

For the foregoing reasons, the judgment of the trial court is reversed and remanded to afford plaintiff the opportunity to proceed on his claims of false arrest and deprivation of constitutional rights against defendant Weidemeyer but only with respect to actual damages. In all other respects, the judgment of the trial court is hereby affirmed.

Affirmed in part; reversed and remanded in part.

All concur.

## ON MOTION FOR REHEARING

PER CURIAM.

■ In his motion for rehearing, plaintiff contends that liability of the city under § 1983 may be grounded upon its ownership and use of the municipal traffic com-

---

5. Section 544.216, RSMo Cum.Supp.1983 provides:

 Any sheriff or deputy sheriff, and any county or municipal law enforcement officer in this state, except those officers of a political subdivision or municipality having a population of less than two thousand persons or which does not have at least four full-time nonelected peace officers unless such subdivision or municipality has elected to come under and is operating under the provisions of sections 590.100 to 590.-

150, RSMo, may arrest on view, and without a warrant, any person he sees violating or who he has reasonable grounds to believe has violated any law of this state, including a misdemeanor, or has violated any ordinance over which such officer has jurisdiction. The power of arrest authorized by this section is in addition to all other powers conferred upon law enforcement officers, and shall not be construed so as to limit or restrict any other power of a law enforcement officer.

puter system which generated the "warrant" entry acted upon by Officer Weidemeyer. Based upon this Court's conclusion that plaintiff's arrest by Officer Weidemeyer under the particular circumstances present here was unlawful, plaintiff urges that the city's practice of issuing such "warrants" deprived him of his civil rights. However, as noted in the Court's opinion, municipal liability under § 1983 may follow only from the implementation of "official policy" or "governmental custom." The peculiar flaw in Officer Weidemeyer's actions, pertinent to this discussion, is that his arrest of plaintiff occurred without a warrant and beyond the territorial limits of the city of Kansas City. Had the computer "warrant" been executed within the city, no such problem would have existed. In order to make a *prima facie* case against the city under the theory suggested by plaintiff, there would have to be proof that it was the policy or custom of the city to cause warrantless arrests of this particular type outside its territorial limits. No such proof was elicited, and plaintiff's claim therefore fails.