Toby CAMPBELL, Plaintiff–Appellant,

v.

Teresa CALLOW, Defendant–Respondent.

No. 19266.

Missouri Court of Appeals,
Southern District,
Division Two.

May 12, 1994.

Charles J. McMullin, St. Louis, for appellant.

James E. Spain, Samuel P. Spain, Spain, Merrell and Miller, Poplar Bluff, for respondent.

FLANIGAN, Presiding Judge.

On May 11, 1993, plaintiff Toby Campbell filed this wrongful death action against defendant Teresa Callow in the Circuit Court of Stoddard County. The petition alleged: Kailey McNew was born July 6, 1989; plaintiff is Kailey's biological father, and defendant is Kailey's biological mother; on June 11, 1991, Kailey was a passenger in a motor vehicle operated by defendant; the vehicle collided with a bridge; the collision was due to the negligence of defendant in the operation of the vehicle; on June 13, 1991, Kailey died as a result of injuries she sustained in the collision.

The trial court, on motion of defendant and after an evidentiary hearing, dismissed the action on the ground of "Missouri's parental immunity doctrine." Plaintiff appeals.

Except for the issue of whether defendant was negligent in the operation of the vehicle, an issue not reached by the trial court, there is no factual dispute. Plaintiff and defendant never married each other, but they are the parents of decedent. Plaintiff and defendant never lived together. Until her death, Kailey lived with her mother. On March 30, 1990, defendant married David Callow.

Plaintiff contends that the trial court erred in dismissing this wrongful death action because: (1) "The appellant-father of the illegitimate child is not required to bring the wrongful death claim in the name of the minor-decedent in his action against the mother of the child and may sue directly for loss of services and expenses"; (2) "There are many exceptions [to the parental immunity doctrine] permitting said suit;" (3) "The parent and child relationship was severed due to the death of the child so that there is no family harmony to be disrupted. Thus, parental immunity is no bar"; (4) "The action was not barred by the doctrine of parental immunity as shown by many diverse jurisdictions and particularly when the minor is killed."

Section 537.080 [1] reads, in pertinent part:

"Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance *which, if death had not ensued, would have entitled such person to recover damages in respect thereof,* the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for

(1) By the spouse or children, natural or adopted, legitimate or illegitimate, or by the *father or mother* of the *deceased, natural* or adoptive; . . ." (Emphasis added.)

Section 537.085 reads:

"On the trial of such action to recover damages for causing death, the defendant may plead and prove as a defense any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued."

 Wrongful death is a statutory cause of action. *Sullivan v. Carlisle,* 851 S.W.2d 510, 512[4] (Mo. banc 1993). Missouri does not recognize a common law cause of action for wrongful death. *Id.* at 516[15]. A wrongful death claim does not belong to the deceased. The right of action is neither a transmitted right nor a survival right, but is created and vested in the survivors at the moment of death. *Id.* at 515[13].

 Prior to December 19, 1991, the date of issuance of the opinion in *Hartman by Hartman v. Hartman,* 821 S.W.2d 852 (Mo. banc 1991), a minor unemancipated child could not sue its parent for negligent operation of an automobile. *Hartman,* at 853–854; *Baker v. Baker,* 364 Mo. 453, 263 S.W.2d 29, 32 (1953); *Owens v. Owens,* 854 S.W.2d 52, 54 (Mo.App.1993). This was the so-called "parental immunity doctrine ... articulated in [Baker]"; *Hartman,* at 852, which was court-made and not statutory in

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

origin. *Fugate v. Fugate,* 582 S.W.2d 663, 668 (Mo. banc 1979); *Owens,* at 54.

In *Hartman,* the court said, at 858:

"In summary, this Court abrogates the parental immunity doctrine of *Baker v. Baker.* Minor unemancipated children are authorized to bring actions sounding in negligence against their parents. The actions of parents are to be measured by a reasonable parent standard."

The court in *Hartman,* at 858, stated that its abrogation of the parental immunity doctrine applied only to the following cases: (1) "those cases pending in the trial court in which a claim challenging and seeking the overturn of parental immunity doctrine has been timely raised as of [December 19, 1991] as well as to those cases in which appealable orders have been entered by the trial court and in which the aggrieved party (or parties) has preserved such issue in a timely manner for appellate review as of [December 19, 1991]," and (2) "to causes of action that arise after [December 19, 1991]."

This case does not come within category (1) because it was filed in 1993 and, of course, was not pending as of December 19, 1991. This case does not come within category (2) because Kailey's death occurred on June 13, 1991. A cause of action for wrongful death arises, if at all, at the moment of death.

On the date of Kailey's death, the parental immunity doctrine articulated in *Baker* was still viable, although its application had been limited. In *Hartman,* at 853–854, the court cited cases, decided post-*Baker* and pre-*Hartman,* where it declined to extend the rule of parental immunity to emancipated minors, or to the estate of a deceased parent or to a living noncustodial parent. *Hartman* referred to those decisions as "a piecemeal abrogation of the immunity."

In *Hartman,* the court consolidated two cases. The *Hartman* case was an action by minor children against their father, seeking recovery for personal injuries sustained by the children as a result of his negligence. The other case was the *Armstrong* case, which is peculiarly significant to the case at bar.

In the *Armstrong* case, Michael Armstrong, Jr., the unemancipated child of Mary Armstrong, died from injuries sustained due to the alleged negligence of Mary Armstrong in the operation of a vehicle. Michael Armstrong, father of the decedent, brought a wrongful death action against Mary Armstrong. Mary filed a motion to dismiss, asserting that the parental immunity doctrine barred the wrongful death action. Citing *Baker,* the trial court sustained Mary's motion.

In *Hartman,* at 858, the court said:

"In the Armstrong case, *the abrogation of the parental immunity doctrine* allows Michael Armstrong to bring the wrongful death action for the death of Michael, Jr., against Michael, Jr.'s mother. § 537.085, RSMo 1986." (Emphasis added.)

The unmistakable conclusion to be drawn from the foregoing language is that the abrogation of the parental immunity doctrine, which became effective on December 19, 1991, permitted the maintenance of the *Armstrong* wrongful death action, and that, absent that abrogation, the action would not lie. In the case at bar, any cause of action for the wrongful death of Kailey arose on June 13, 1991, which was prior to the abrogation. It follows that this action is barred by the parental immunity doctrine because this case does not come within the two categories of cases defined in *Hartman.*

It is significant that the court cited § 537.085 in support of its statement that the abrogation of the doctrine allowed the *Armstrong* wrongful death action. That statute, set forth earlier in this opinion, permits the defendant in a wrongful death action to plead and prove as a defense any defense which the defendant would have had against the deceased for personal injuries arising out of the same circumstances. If Kailey had survived the collision of June 11, 1991, and had filed an action for personal injuries against defendant, the action would have been barred by *Baker* because Kailey was a minor unemancipated child of the defendant and the purported claim was based on negligent operation of an automobile.

In *Klein v. Abramson*, 513 S.W.2d 714 (Mo.App.1974), the court held that a daughter could not maintain a wrongful death action against her stepfather for her mother's wrongful death allegedly caused by the negligence of the stepfather. At the time of the events in *Klein*, § 537.080 read, in pertinent part:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, *and* the act, neglect or default *is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof*, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, ..." (Emphasis added.)

After quoting the foregoing statute, and emphasizing the same portions, the court said, at 717[2]:

"The clear meaning of this statute is that the legislature saw fit to condition the right to sue for wrongful death upon the primary fact that the decedent could have maintained an action for damages for the injuries had he survived. If such condition cannot be shown, no cause of action for the wrongful death exists. *Worth v. St. Louis–San Francisco Ry. Co.*, 334 Mo. 1025, 69 S.W.2d 672, 674 (1934); *Fitzpatrick v. Kansas City Southern Ry. Co.*, 347 Mo. 57, 146 S.W.2d 560, 565 (1940); *Zuber v. Clarkson Construction Company*, 315 S.W.2d 727, 733 (Mo.1958)."

Section 537.080, in its present form, is set forth in the fifth paragraph of this opinion. Although its language has been modified since *Klein*, the modification becoming effective on September 28, 1979, (L.1979, H.C.S.S.B. No. 368, p. 630, § 1), the modification is not significant here.

The salient fact is that Kailey died prior to the effective date of the abrogation of the parental immunity doctrine. Kailey could not have successfully sued defendant for personal injuries. Under the circumstances, if death had not ensued, Kailey would not have been entitled "to recover damages in respect thereof." § 537.080. Under § 537.085, defendant was permitted to plead and prove, as she did, that the parental immunity doctrine would have been a defense against Kailey in an action for personal injuries, and that defense is available and effective against plaintiff in this action.

Plaintiff's contentions, as set forth in the fourth paragraph of this opinion, are unsound. Contention (1) is answered by the following language in *Klein*, at 718[7]:

"[B]y the enactment of the Wrongful Death Act, the legislature created a new cause of action which did not exist at common law. In so doing, it preempted the field and declared the nature of the action, the conditions for the maintenance, the damages and elements thereof recoverable and the parties entitled to sue. Children's rights, as well as the rights of adults, are therein defined and limited. If a new cause of action is to be created, the conditions for maintenance of suit relaxed or the elements of recoverable damage broadened, such must be accomplished by legislative authority."

Contention (2) is unsound because the facts here do not fit into any of the pre-*Hartman* exceptions to the parental immunity doctrine. Contention (3) is unsound for the reason set forth in the paragraph preceding the discussion of contention (1). Contention (4) is unsound because this case is governed by the Missouri wrongful death act and Missouri case law.

The judgment is affirmed.

PREWITT and CROW, JJ., concur.