**Bonnie J. MILLER and Francis H. Miller, Appellants,**

v.

**Robert E. SMITH, Respondent.**

No. WD 50521.

Missouri Court of Appeals, Western District.

Feb. 27, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Application to Transfer Denied May 28, 1996.

David T. Greis, William H. Pickett, Kansas City, for appellants.

Steven W. White, Rebecca L. Rolf, White, Allinder & Graham, Independence, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

The plaintiffs, Bonnie J. Miller and Francis H. Miller, filed a two-count wrongful death petition against Robert E. Smith, a sergeant with the Smithville, Missouri Police Department. The Millers appeal the trial court's order entering summary judgment in favor of Sergeant Smith.

The Millers present five points on appeal, contending the trial court erred in granting Sergeant Smith's motion for summary judgment because: a) the motion failed to comply with the particularity requirements of Rule 74.04(c)(1); b) the public duty doctrine and official immunity doctrine are unconstitutional as applied to the wrongful death statute; and c) there are genuine issues of material fact as to whether the public duty, official immunity and qualified immunity doctrines are applicable. The judgment of the trial court is affirmed.

■ Summary judgment should be granted only if the movant is undisputedly entitled to judgment as a matter of law and no genuine factual disputes exist. *ITT Commercial Finance v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). In reviewing the entry of summary judgment, this court views the record in the light most favorable to the Millers and affords them the benefit of all reasonable inferences drawn therefrom. *Id.* at 382.

On the night of May 5, 1992, Sergeant Smith was on patrol duty for the Smithville, Missouri Police Department. He observed the vehicle driven by Rodney Miller cross the center line of a highway several times. Sergeant Smith pulled Mr. Miller over to the shoulder of the road, but before Sergeant Smith could get out of his car, Mr. Miller pulled back onto the highway. Sergeant Smith then stopped Mr. Miller a second time, this time successfully.

After requesting and receiving Mr. Miller's driver's license, Sergeant Smith asked him to submit to a field sobriety test. Mr. Miller agreed to do so and fully cooperated in the performance of the test. After completion of the test, Sergeant Smith determined that Mr. Miller was intoxicated and informed him that he was under arrest for driving while intoxicated.

Sergeant Smith told Mr. Miller that he could either secure his truck on the side of the road or have it towed. Mr. Miller's truck had been left running while he took the sobriety test. With Sergeant Smith following behind him, Mr. Miller got back into his truck and made a movement which Sergeant Smith interpreted as an effort to put the truck in gear. Sergeant Smith then reached through the window of the truck and turned off the ignition. He advised Mr. Miller a second time that he was under arrest.

Mr. Miller stepped out of the truck, removed a gun case from behind the front seat, threw the gun case into the cab of the truck, and got back inside. Sergeant Smith again advised Mr. Miller that he was under arrest. Mr. Miller then opened the gun case, revealing a pistol. Sergeant Smith drew his gun, pointed it at Mr. Miller, and told him to leave the pistol and get out of the truck. Mr. Miller then grabbed the pistol, inserted a magazine into the pistol, placed it to his head and pulled the trigger, fatally wounding himself.

Mr. Miller's parents filed a two-count wrongful death petition against Sergeant Smith in the Circuit Court of Clay County, Missouri. The first count alleged Sergeant

Smith negligently failed to restrain and protect Mr. Miller after placing him under arrest. The second count was brought under 42 U.S.C. § 1983, asserting that the "deliberate indifference of Defendant Smith deprived Rodney J. Miller of his right to be protected while in the custody of a law enforcement officer in violation of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution."

Sergeant Smith filed a motion for summary judgment. He sought immunity on the first count under the public duty doctrine and the official immunity doctrine. For the § 1983 claim, Sergeant Smith alleged that he did not act with the requisite deliberate indifference to the risk that Mr. Miller would commit suicide. Sergeant Smith also alleged that he was entitled to qualified immunity. After a hearing, the trial court entered an order sustaining Sergeant Smith's motion for summary judgment.

■ The Millers' first point on appeal contends the trial court erred in granting Sergeant Smith's motion for summary judgment, because the motion failed to comply with the particularity requirements of Rule 74.04(c)(1). This rule, in pertinent part, requires a movant to:

> state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts.

Rule 74.04(c)(1). The purpose of the rule is to "apprise the opposing party, the trial court, and in turn the appellate court of the specific basis on which the movant claims he is entitled to summary judgment." *Moss v. City of St. Louis*, 883 S.W.2d 568, 569 (Mo. App.1994).

■ Sergeant Smith's motion for summary judgment states that "pursuant to Mo. R.Civ.P. 74.04 [he] requests the Court to make and enter its order granting him summary judgment. In support of his Motion Defendant offers the accompanying suggestions." The suggestions in support of the motion include a statement of uncontroverted facts, with separately numbered paragraphs and references to supporting documentation. The Millers concede that the suggestions in support of the motion satisfy the requirements of Rule 74.04(c)(1). However, the Millers argue that the motion itself does not comply with the rule, because it fails to "incorporate" those suggestions.

Assuming *arguendo* that the motion does not incorporate the suggestions, this court is authorized to review the motion on the merits where the basis for the motion is obvious to counsel, to the trial court and to the appellate court. *Mathes By and Through Mathes v. Nolan*, 904 S.W.2d 353, 355 (Mo. App.1995). The basis for the motion was certainly obvious to the Millers, whose motion in opposition specifically responds to each paragraph in the suggestions' statement of uncontroverted facts. The failure of the motion, if any, to technically comply with the requirements of Rule 74.04(c)(1) does not prevent this court from exercising its discretion to review the motion on the merits. *Id.* The Millers' first point is denied.

The Millers' second point reads:

> The trial court erred in granting Sgt. Smith's motion for summary judgment as to Count I, on the basis of the public duty doctrine and/or the official immunity doctrine, because both doctrines violate the Fourteenth Amendment of the United States Constitution (equal protection and due process); Article I, §§ 2 and 10 of the Missouri Constitution (equal protection and due process); Article I, § 14 (open courts) and Article I, § 22(A) (trial by jury) of the Missouri Constitution, since the public policy of Missouri, as stated by the General Assembly in § 537.080, R.S.Mo.1986, contains no exemptions, exceptions or limitations based on employment status, on the right of a wrongful death statutory beneficiary to file suit against a tortfeasor.

■ The point challenges the constitutionality of the public duty doctrine and the official immunity doctrine as applied to the Missouri wrongful death statute, § 537.080,

RSMo 1994.[1] The official immunity doctrine holds that public officials are not personally liable for negligent acts strictly related to discretionary functions. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). The public duty doctrine provides immunity to public employees for duties owed to the general public. *State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536, 538 (Mo. banc 1988).

Missouri's wrongful death statute creates a statutory cause of action unrecognized at common law. *Sullivan v. Carlisle*, 851 S.W.2d 510, 516 (Mo. banc 1993). A claim for wrongful death "is neither a transmitted right nor a survival right, but is created and vests in the survivors at the moment of death." *Id.* at 515. The Millers argue that the wrongful death statute is "self-contained," dictating who may file suit and what types of damages are recoverable. According to the Millers, the statute fails to provide any express limitations on the right to sue, thus the "public policy of Missouri is that *anyone* whose negligence leads to the death of another person may be held accountable for that death to the statutory beneficiaries."

Based on this assumption, the Millers contend that application of the public duty and official immunity doctrines, in contravention of the legislatively expressed public policy of the wrongful death statute, is unconstitutional. The Millers argue that by providing certain defendants in wrongful death actions with immunity, these judicially-created doctrines attempt to supersede the wrongful death statute's intent that there be no limitations on the right to sue under the statute. Specifically, the Millers allege that application of the doctrines violates "the Fourteenth Amendment of the United States Constitution (Equal Protection and Due Process); Article I, §§ 2 and 10 of the Missouri Constitution (Equal Protection and Due Process); Article I, § 14 (Open Courts) and Article I, § 22(A) (Trial by Jury) of the Missouri Constitution."

This court need not address those constitutional issues because the underlying premise of the Millers' argument is flawed. Missouri's wrongful death statute does provide limitations on the right to recover under the statute. § 537.080.1 provides:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance *which, if death had not ensued, would have entitled such person to recover damages in respect thereof,* the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, . . . .

(emphasis added).

When interpreting a statute, appellate courts determine the legislature's intent from the language of the act, considering the words used in their plain and ordinary meaning, and give effect to that intent whenever possible. *Sullivan*, 851 S.W.2d at 512. The clear intent of this provision is to restrict the right to sue under the wrongful death statute to situations where the decedent could have brought a suit for damages for decedent's injuries. *Campbell v. Callow*, 876 S.W.2d 25, 28 (Mo.App.1994). In *Fugate v. Fugate*, 582 S.W.2d 663 (Mo. banc 1979), the Missouri Supreme Court held that the doctrine of parental immunity was applicable to wrongful death statute. *See also Lawrence v. Board of Police Com'rs*, 604 F.Supp. 1229, 1233 (E.D.Mo.1985) (defendants in wrongful death action entitled to immunity under the official immunity doctrine); *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141, 147–48 (Mo.App.1974) (charitable immunity a proper defense under the wrongful death statute).[2]

§ 537.085 reinforces the language in § 537.080 by providing that a defendant in a wrongful death suit may:

> plead and prove as a defense any defense which the defendant would have had against the deceased in an action based

---

**1.** References to statutes are to Revised Statutes of Missouri 1994.

**2.** The doctrines of parental immunity and charitable immunity have since been abolished by the Missouri Supreme Court. *Hartman by Hartman v. Hartman*, 821 S.W.2d 852, 858 (Mo. banc 1991) (abolishing parental immunity); *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 606 (Mo. banc 1969) (abolishing charitable immunity).

upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued.

The Millers' brief makes no reference to § 537.085. Rather, the Millers emphasize that the wrongful death statute does not expressly mention the public duty doctrine or the official immunity doctrine. According to the Millers, the failure to mention either doctrine indicates that their application violates the express public policy established by the statute.

Failure to specifically incorporate the two doctrines into the wrongful death statute does not evidence an intent to bar their application. It was the clear intent of the legislature that as the viability of common law defenses changes, so does the availability of recovery under the statute. *See Campbell*, 876 S.W.2d at 27.

In *Campbell*, 876 S.W.2d 25, the southern district of this court addressed whether the parental immunity doctrine barred the plaintiff's wrongful death suit. The court determined that although the doctrine of parental immunity had been abolished by the Missouri Supreme Court in *Hartman*, 821 S.W.2d 852, it was still in effect at time of the decedent's death. *Campbell*, 876 S.W.2d at 27. The court then noted that in *Hartman*, it was the abrogation of the doctrine of parental immunity that permitted the maintenance of a wrongful death action. *Id.* The court reasoned that the rule in *Hartman* also stood for the opposite proposition: if the doctrine of parental immunity was in effect, a suit for wrongful death would not lie. *Id.* Thus, the wrongful death statute clearly expresses the intent that viable common law defenses restrict the right of statutory beneficiaries to bring suit under the statute.

The Millers' assertion that the legislature "deliberately chose not to create any exceptions to the grant of the right to sue" is incorrect. Because the Millers' constitutional argument rests upon this fallacious assumption, further discussion of the point is unnecessary. Point denied.

The Millers' third point alleges the trial court erred in granting summary judgment in favor of Sergeant Smith as to count one on the basis of the public duty doctrine. Due to this court's determination, under the Millers' fourth point, that Sergeant Smith is entitled to summary judgment on the basis of the official immunity doctrine, the Millers' third point need not be addressed. The trial court's entry of summary judgment will be affirmed if it is sustainable as a matter of law on any ground. *Davis v. Human Dev. Corp., Inc.*, 887 S.W.2d 638, 639 (Mo.App.1994).

The Millers' fourth point challenges the trial court's application of the official immunity doctrine. As noted above, the doctrine provides immunity to public officials for negligent acts strictly related to discretionary functions. *Green*, 738 S.W.2d at 865. The Millers argue that there is a genuine issue of material fact as to whether the actions taken by Sergeant Smith following the arrest of Mr. Miller were ministerial or discretionary.

A discretionary act is one that requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or a course pursued." *Kanagawa v. State by and Through Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985) (*quoting Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984)). In contrast, a ministerial act is of a clerical nature. *Id.* The public officer performing a ministerial function acts in a prescribed manner, on a given set of facts, and "in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (*quoting Rustici*, 673 S.W.2d at 769).

Whether an act is discretionary or ministerial depends upon the facts of each case. *Fonseca v. Collins*, 884 S.W.2d 63, 66 (Mo.App.1994). Some factors to consider include: 1) the nature of the officer's duties; 2) the extent of policymaking or exercise of professional expertise and judgment; and 3) the likely effect of withholding immunity. *Id.* In applying these factors, this court is aware that discretionary functions should not be so narrowly construed so as to frustrate

the purpose of the official immunity doctrine, which is to protect those who, with limited resources and imperfect information, are charged with the responsibility of exercising their best judgment in the administration of public affairs. *Sanders,* 756 S.W.2d at 538; *Bachmann v. Welby,* 860 S.W.2d 31, 33 (Mo. App.1993).

The record supports the determination that the actions taken by Sergeant Smith following the arrest of Mr. Miller were discretionary as a matter of law. The nature of Sergeant Smith's duties at that time included a duty to exercise care to transport Mr. Miller safely to the police station. The means of doing so were not prescribed by any department policy or regulation, but were left to Sergeant Smith's professional judgment.

The Millers point to the Smithville Police Department Policy 8–21 as evidence that Sergeant Smith's acts were specifically delineated and therefore ministerial. Policy 8–21 states: "Any member of the department who has at any time the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in custody." The general instruction to safeguard an individual in custody merely describes an objective, while reserving the determination of how to meet that goal to the professional judgment of the individual officer.

Policy 8–21 does not require that the vehicle of an arrestee be towed. Nor does it direct the arresting officer to allow the arrestee to secure his vehicle so it can be left on the side on the road. Arrestees are not required to be immediately restrained; nor are they ordered to be left unrestrained. In short, the decision on how to safely transport an arrestee to the police station is left to the professional judgment of the police officer.

The likely reason that Policy 8–21 fails to specifically set out post-arrest procedures is that it would be impossible to anticipate what should be done in every situation. This is particularly true where, as here, the circumstances of the arrest changed dramatically after Mr. Miller picked up the pistol. What had previously been a routine arrest became

a life-threatening situation. Certainly, the proper reaction by a police officer when confronting an individual with a gun cannot be prescribed by a department policy or regulation. As the Supreme Court of Missouri noted in *Green,* 738 S.W.2d at 865, "[i]t is hard to imagine a setting more demanding of judgment than one in which line officers of the police department confront a person who has recently flourished a gun."

The Millers argue that Sergeant Smith could have prevented Mr. Miller's fatal gun shot by taking the gun away from him, firing a warning shot, or even shooting to wound him. However, that is exactly the type of second guessing which the official immunity doctrine is designed to prevent. *Id.* at 866. This is true "even though hindsight may demonstrate errors in judgment which might be branded as negligent by qualified evaluators." *Id.*

Upon seeing the pistol in Mr. Miller's possession, Sergeant Smith made the decision to draw his own gun, point it at Mr. Miller, and direct him to put the gun down. The issue is not whether Sergeant Smith acted appropriately. The issue is whether the acts taken by Sergeant Smith were discretionary. Due to the nature of his duties, the professional judgment required to carry out these duties, and the adverse consequences of withholding immunity, Sergeant Smith's actions are protected by the official immunity doctrine.

The Millers also argue that even if the actions taken by Sergeant Smith are considered discretionary, his failure to act should not be deemed an exercise of discretion. The Millers contend that Sergeant Smith should not have "the discretion to choose to do nothing to prevent someone under arrest from obtaining access to a gun and shooting himself." The doctrine of official immunity applies not only to discretionary acts and functions, but also to omissions. *Bachmann,* 860 S.W.2d at 33. Discretion involves both the decision to take action and the decision to do nothing. *Green,* 738 S.W.2d at 866. The Millers' fourth point is denied.

The Millers' fifth and final point alleges the trial court erred in granting sum-

mary judgment in favor of Sergeant Smith on the Millers' claim under 42 U.S.C. § 1983. Both state and federal courts have jurisdiction to hear § 1983 cases. *Howlett v. Rose,* 496 U.S. 356, 358, 110 S.Ct. 2430, 2433, 110 L.Ed.2d 332 (1990). To establish a valid § 1983 claim of violation of federal constitutional rights, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under the color of state law and that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution. *Jennings v. Davis,* 476 F.2d 1271, 1275 (8th Cir.1973). The Millers assert that the conduct of Sergeant Smith denied Mr. Miller his constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution.

■■■■ Both parties on appeal construe the situation here as analogous to "inmate suicide" cases. An inmate's Eighth Amendment rights are violated if prison officials were "deliberately indifferent to the risk of suicide." *Rellergert ex rel. Rellergert v. Cape Girardeau County, Mo.,* 924 F.2d 794, 796 (8th Cir.1991). Although Eighth Amendment analysis applies only to convicted prisoners, the United States Supreme Court has held that under the due process clause of the Fourteenth Amendment, "pretrial detainees" hold at least the level of constitutional protection enjoyed by prisoners. *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). A pretrial detainee includes an individual who is being apprehended by the police. *City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *See also Martin v. Gentile,* 849 F.2d 863, 870–71 (4th Cir.1988).

■■■■ Officials are liable for failing to protect a pre-trial detainee from self-inflicted harm only if they display "deliberate indifference" to his suicidal tendencies. *Bell v. Stigers,* 937 F.2d 1340, 1343 (8th Cir.1991). Here, the Millers did not present any facts which are consistent with an accusation of "deliberate indifference." To show deliberate indifference, there must be "a strong likelihood, rather than a mere possibility, that self-infliction of harm would result." *Id.*

at 1343 (*quoting Edwards v. Gilbert,* 867 F.2d 1271, 1276 (11th Cir.1989)). The 8th Circuit, in *Bell,* held that "[a]n allegation of deliberate indifference must be considered in light of the level of knowledge possessed by officials involved, or that which *should have been known* as to an inmate's suicidal tendencies." *Bell,* 937 F.2d at 1343 (*quoting Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir.1990)) (emphasis added).

In *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the United States Supreme Court, within the context of the Eighth Amendment, first adopted a definition of "deliberate indifference" which incorporated a subjective standard of liability. Under this standard, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at ——, 114 S.Ct. at 1979. Accordingly under *Farmer,* it is insufficient to show that the official "should have been aware" of a risk of suicide; the official must have actual knowledge of the decedent's suicidal tendencies. *See Randle v. Parker,* 48 F.3d 301, 304 (8th Cir.1995).

There has not been a definitive determination that the Supreme Court's definition of "deliberate indifference" under the Eighth Amendment should be applied in the context of an alleged violation of a pre-trial detainee's Fourteenth Amendment rights. This court is not required to reach this issue, however, because under either the *Farmer* or the *Bell* standard the Millers have not pled sufficient facts to support a finding that Sergeant Smith acted with deliberate indifference. Therefore, although *Bell* applies a different standard than that of the United States Supreme Court's decision in *Farmer,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811, *Bell*'s analysis and conclusion remain viable.

In *Bell,* 937 F.2d at 1341, the plaintiffs' son, Sam Bell, was taken into custody and brought to a county jail after being arrested for drunk driving. Francis Stigers was the jail official who booked Mr. Bell. Mr. Stigers removed several items of Mr. Bell's clothing and personal belongings but failed to detect and remove his belt. Mr. Bell later

hung himself by his belt in his jail cell, suffering permanent brain damage and other physical injuries. *Id.*

His parents brought a § 1983 action against various county officials, including Mr. Stigers. The district court denied Mr. Stigers' motion for summary judgment on the ground that there was a genuine issue of material fact as to whether Mr. Stigers should have been aware of the risk that Mr. Bell would commit suicide. The 8th Circuit reversed the district court's denial of summary judgment and entered summary judgment in favor of Mr. Stigers. *Id.* at 1345.

The court held that because Mr. Stigers was unaware and had no reason to suspect that Mr. Bell was a suicide risk, Mr. Stigers could not be charged with deliberate indifference. *Id.* at 1344. The court noted that Mr. Bell did not display any agitated or hysterical behavior during the time that he was being booked by Mr. Stigers. *Id.* Nor did Mr. Bell make any serious threats to commit suicide. Furthermore, Mr. Stigers did not know if Mr. Bell had ever previously attempted suicide or received psychiatric counseling. *Id.*

The situation here is analogous to that in *Bell.* When Sergeant Smith stopped Mr. Miller for erratic driving, Sergeant Smith had no knowledge as to whether Mr. Miller had ever attempted suicide in the past. Mr. Miller fully cooperated in the field sobriety test and did not make any suicide threats. Under these circumstances, it cannot be said that Sergeant Smith acted with deliberate indifference to the risk that Mr. Miller would commit suicide. *Id.* at 1344. The Millers have not come forward with evidence to establish that Sergeant Smith possessed the level of knowledge required under the deliberate indifference standard of either *Farmer* or *Bell.* Accordingly, Sergeant Smith is entitled to summary judgment. *ITT,* 854 S.W.2d at 381.

■ Government officials performing discretionary functions are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boswell v. County of Sherburne,* 849 F.2d 1117, 1120 (8th Cir.1988),

*cert. denied* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). Because the entry of summary judgment was proper on the ground discussed above, it is unnecessary to determine whether Sergeant Smith is also entitled to qualified immunity. *Bell,* 937 F.2d at 1345. The Millers' fifth point is denied.

The order of the trial court granting summary judgment in favor of Sergeant Smith is affirmed.

All concur.