

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| VICKI SHADE-SCHAEFER, INDIVIDUALLY, AND VICKI SHADE-SCHAEFER ON BEHALF OF THE ESTATE OF WAYNE SCHAEFER, CHRISTOPHER SCHAEFER, AND STEPHANIE SCHAEFER, | ) ) ) ) ) ) ) | No. ED110581<br><br>Appeal from the Circuit Court of St. Louis County<br>16SL-CC01615 |
| Appellants, | ) ) | |
| | ) | Honorable William M. Corrigan, Jr. |
| vs. | ) ) | |
| CITY OF EUREKA, ROBERT WADE, AND RICHARD GREEN, | ) ) ) | Filed: May 9, 2023 |
| Appellant. | ) ) | |

Kelly C. Broniec, P.J., James M. Dowd, J., and Lisa P. Page, J.

## OPINION

In the civil action underlying this appeal, Appellants Vicki Shade-Schaefer, Christopher Schaefer, and Stephanie Schaefer claim they suffered serious inhalation injuries arising from the painting of large water tanks owned by the City of Eureka which occurred on property adjacent to Appellants' home. The trial court entered summary judgment in favor of defendants City of Eureka on sovereign immunity, Robert Wade, a Eureka employee, on official immunity, and Richard Green, the painter, on statute of limitations, and denied Appellants leave to add to their lawsuit a wrongful death claim against the original defendants and against two new defendants,

Casey Thompson Enterprises, Inc., and Structural Contractors, Inc., after one of the original plaintiffs died, allegedly from the inhalation injuries claimed in the lawsuit.

Appellants now appeal. We reverse and remand in part and affirm in part. We reverse the judgment in favor of Eureka because Eureka's painting and maintenance of the water tanks was done in its *proprietary* function and therefore it is not entitled to sovereign immunity. We affirm as to Wade because since Wade's supervision of the project was discretionary as opposed to ministerial, he is entitled to official immunity. As to Green, the painter, we also affirm because he was not notified that he was a target of the lawsuit until after the statute of limitations had run. The trial court's denial of leave to file the third amended petition is reversed as to Eureka, Green, Casey Thompson, and Structural Contractors because the statute of limitations on the wrongful death claim had not yet run. Finally, we affirm the court's ruling denying leave to file the third amended petition as to the claim against Wade because Wade is entitled to official immunity for his discretionary acts including those that allegedly gave rise to the wrongful death.

**Background**

On May 3, 2011, Eureka contracted with Pittsburg Tank & Tower Maintenance Co. (PTT) to perform maintenance, including the re-painting of two city-owned water tanks located adjacent to Appellants' property. The painting work at issue occurred between May 28 and June 9, 2011. This included sand blasting the water tanks to remove all foreign matter including old paint, corrosion, salt, mildew and mold, and priming and painting the exterior and interior of the tanks. PTT contracted with Casey Thompson to perform the work. Casey Thompson employed Structural Contractors who, in turn, hired Green to do the painting. Wade was Eureka's public works supervisor and was tasked with supervising and inspecting the work on the tanks.

Green used a spray nozzle to paint the tanks. Appellants allege that Green "negligently and carelessly sprayed paint and paint mist into the atmosphere and onto adjacent properties

2

including [Appellants'] property and on and in [Appellants'] person." Appellants further allege that paint was found "on several houses in that area and specks of paint were spread all over Plaintiff's property including the house, roof, gutters, trees, barbecue pit, cars, deck and [Appellants]." As a result of the overspray, Appellants allege they inhaled and ingested the paint which they claim "contained toxic substances of [] various nature[s] including but not limited to, hexamethylene diisocyanate (HDI)" and that "HDI is a toxic substance known to cause respiratory issues if inhaled or ingested." Appellants claim they were injured by ingesting and inhaling HDI.

Summarizing the procedural history of this case, while arduous, is necessary to our disposition. Appellants filed their initial petition on May 2, 2016, against PTT, Eureka, Wade, and the painter, "John Doe," whose identity at the time was unknown to Appellants. On November 15, 2016, Appellants filed their first amended petition adding a claim for negligence *per se*. At the March 13, 2017, deposition of Green, Appellants learned that Green was the painter. So, on May 23, 2017, Appellants moved to substitute Green for "John Doe." After the trial court granted Appellants' motion to substitute on July 13, 2017, Green was served with the amended petition on August 8, 2017. Appellants' second amended petition, filed on December 14, 2017, alleged additional facts supporting their liability and punitive damages' claims.

On March 20, 2019, Eureka and Wade filed a motion for summary judgment. Eureka alleged they were entitled to sovereign immunity, and Wade alleged he was entitled to official immunity and was also protected by the public duty doctrine. Appellants responded to this motion on May 24, 2019, alleging there were disputed material facts such that neither Eureka nor Wade was entitled to judgment as a matter of law. On July 10, 2019, after a hearing, the trial court granted this summary judgment motion which left PTT and Green as the only remaining defendants.

3

On July 23, 2019, Green filed his own summary judgment motion. Green alleged the claims against him were time-barred because the July 13, 2017, substitution of parties occurred after the statute of limitations had run and did not relate back to the timely filing of the original petition because Green did not receive notice of his liability exposure until _after_ the statute of limitations had already run. In their October 1, 2019, response, Appellants argued that Green had timely notice of his exposure such that the substitution should relate back to the timely filing of the original petition. After a hearing, the court entered its November 5, 2019, order granting Green's motion which left PTT as the only remaining defendant.

On March 26, 2021, plaintiff Wayne Schaefer died. The immediate cause was "asphyxia from obstructive airway aspiration of gastric emesis or ingestion" and the underlying cause was "organizing aspiration pneumonitis indicative of prior similar event." Appellants allege the toxic inhalation from the paint overspray caused his death. Appellants rely on the death certificate which states the underlying cause of death was inflammatory lung disease caused by prior inhalation of harmful substances.[1]

On June 1, 2021, Appellants sought leave to file their third amended petition to add a count for wrongful death against Eureka, Wade, Green, and PTT (the original defendants), along with two _new_ defendants, Structural Contractors and Casey Thompson. On June 9, 2021, the trial court, without explanation, denied Appellants leave as to all defendants except PTT. In their motion for reconsideration, Appellants addressed the trial court's erroneous notion that a wrongful death claim is merely an additional damage claim, not a new and separate cause of action. The trial court denied Appellants' motion for reconsideration on June 21, 2021.

---

[1] On May 18, 2021, Wayne Schaefer's estate moved to substitute itself for the decedent. The record is silent as to the disposition of this motion.

On December 17, 2021, however, the trial court revisited its ruling and acknowledged that wrongful death is a cause of action separate from negligence, but that the "statute of limitations…is [not] revived because of the death of Wayne Schaefer."  The trial court wrote "[u]nder [Appellants'] theory, [Appellants'] would have until March 26, 2024 to file their wrongful death action, or nearly 13 years after the painting work was performed."  Therefore, the trial court ruled that the wrongful death claims against Structural Contractors and Casey Thompson were time-barred.  The trial court also noted that granting Appellants' motion to add two new defendants would have required a continuance of the December 6, 2021, trial date.  The trial court also seems to have found that the wrongful death actions against Green, Wade, and Eureka were moot because they "had already obtained Summary Judgment in 2019[.]"  In sum, the court denied Appellants' motion to reconsider, finding the motion to amend untimely "[b]ased on the age of this case, and [the trial court's] inherent responsibility to manage its docket."

Finally, on February 18, 2022, Appellants voluntarily dismissed with prejudice their wrongful death claim against PTT.  Therefore, we consider on this appeal the summary judgments granted to Respondents Eureka (sovereign immunity), Wade (official immunity and public duty doctrine), and Green (statute of limitations), and the trial court's refusal to allow Appellants to file a third amended petition to add a wrongful death claim against all defendants.

## Discussion

### Standard of Review:  Points I – III.

We review summary judgment *de novo*.  *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).  "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law."  *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo.

5

banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)). Questions of immunity, contractual interpretation, and statutory interpretation present legal issues, which we also review *de novo*. *Poke v. Independence Sch. Dist.*, 647 S.W.3d 18, 20 (Mo. banc 2022); *Griffitts v. Old Repub. Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018).

### Point I:  City of Eureka - Sovereign Immunity.

Appellants argue that the proprietary function, insurance waiver, and dangerous condition exceptions to sovereign immunity apply to defeat Eureka's sovereign immunity affirmative defense.  We reverse the summary judgment entered in favor of Eureka because the proprietary function exception applies and strips Eureka of sovereign immunity protection.

Missouri courts have recognized sovereign immunity for over two centuries, beginning with common law as early as 1821.  *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc 2008).  The Missouri legislature codified a modified form of sovereign immunity in 1978, in sections 537.600 to 537.650.  *Id.*  Missouri's sovereign immunity statutes reinforce common law sovereign immunity, and outline three additional exceptions where a public entity is deemed to have expressly waived sovereign immunity.  *Id.*; §§ 537.600.1, 537.610.

Although Appellants argue that all three of these exceptions apply - proprietary function, liability insurance waiver, and dangerous condition - we need only address the proprietary function exception, which we find applicable and dispositive.  *See Southers*, 263 S.W.3d at 609; *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 447-48 (Mo. banc 2004).

Missouri municipalities do not have immunity for proprietary functions but are immune for governmental functions.  *Southers*, 263 S.W.3d at 609; *KITC Homes, LLC v. City of Richmond Heights*, 642 S.W.3d 318, 324 (Mo. App. E.D. 2022).  Proprietary functions "are those performed by the municipality for profit or for the special benefit of the municipality."  *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. App. W.D. 2009).  Proprietary

6

functions "often involve the provision of services or conveniences to a municipality's own citizens." *Id.* "For example, a municipality's sale and distribution of water to customers for private use and a municipality's maintenance of a park have been found to be proprietary functions." *State ex rel. City of Kansas City v. Harrell*, 575 S.W.3d 489, 493 (Mo. App. W.D. 2019) (citing *Gregg v. City of Kansas City*, 272 S.W.3d 353, 360 (Mo. App. W.D. 2008)). Additionally, maintenance incident to a proprietary function remains a proprietary function. *See Lober v. Kansas City*, 74 S.W.2d 815, 819, 821-22 (Mo. 1934) (stating the rule that a municipality would be liable for negligence during maintenance if the maintenance is performed incident to a proprietary function).

Here, the undisputed evidence on the summary judgment record before us demonstrates that these water tanks were part of Eureka's proprietary function of providing water for sale to residents and others. Appellants adduced evidence that: (1) Eureka sells the water from the tanks to Eureka residents, "[a] few" residents outside of Eureka, and to independent contractors and commercial enterprises for a fee; (2) the fee collected consists of water impact charges, hookup charges, and disconnect charges; (3) the use of the fees collected is restricted to the "construction, operation and maintenance of the water and sanitary sewage systems;" and (4) Eureka operates its water system at a profit.

While Respondents have asserted in their briefs and at oral argument that the work done here was for governmental functions beyond the sale of water, only one of Respondents' assertions in this regard is contained in the summary judgment record before us.[2] Specifically,

---

[2] "Facts come into a summary judgment record only via rule 74.04(c)'s numbered-paragraphs-and-responses framework." *O'Donnell v. PNK (River City), LLC*, 619 S.W.3d 162, 166 (Mo. App. E.D. 2021) (quoting *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016)); *see also Fotoohighiam*, 606 S.W.3d at 118. If we were to look beyond the Rule 74.04 record to the trial court's full record, we would be impermissibly acting as an advocate for a party. *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 62 (Mo. App. S.D. 2016).

Respondents claim that the tanks were painted because they "appeared rusted and in need of maintenance." This allegation does not support Respondents' assertion that the work was done in service of a governmental function and therefore Respondents have failed to dispute Appellants' factual allegation that the work was part of Eureka's proprietary sale-of-water function.

Therefore, the purpose of Eureka's water tanks, and the necessary maintenance of those tanks, was "for the benefit of the entity in its corporate capacity" and involved "the provision of services or conveniences to a municipality's own citizens." *KITC Homes*, 642 S.W.3d at 324; *Bennartz*, 300 S.W.3d at 259. Consequently, Eureka is not entitled to sovereign immunity for damages arising out of this proprietary function. Point I is granted.

### Point II: Robert Wade - Official Immunity and the Public Duty Doctrine.

Appellants' argument that Wade's duty to supervise the work on the tanks was ministerial and therefore not protected by official immunity, is based on his general job duties as Eureka's public works supervisor and on certain language in the Water Tank Repairs Agreement. Specifically, Appellants allege that the agreement imposed "detailed job specifications and requirements" for how the maintenance was to be completed and that Wade's duty was merely ministerial to ensure the contractors conformed to the specifications of the contract. We disagree and affirm because we find that Wade's role here was in a discretionary capacity which entitles him to official immunity.[3]

"Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). But liability may still be imposed on public officers performing ministerial functions.

---

[3] As a result, we need not address the public duty doctrine issue.

*Clay v. Scott*, 883 S.W.2d 573, 576 (Mo. App. E.D. 1994).  Therefore, the question becomes whether the function in question was discretionary or ministerial.  *See Davis*, 193 S.W.3d at 763.

Discretionary functions require "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Id.* (quoting *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984)) (internal quotation marks omitted).  "The doctrine of official immunity applies not only to discretionary acts and functions, but also to omissions." *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 492 (Mo. App. E.D. 2009) (quoting *Miller v. Smith*, 921 S.W.2d 39, 42 (Mo. App. W.D. 1996)) (internal quotations marks omitted).  "Discretion involves both the decision to take action and the decision to do nothing." *Id.* (quoting *Miller,* 921 S.W.2d at 42) (internal quotation marks omitted).

Supervisory duties are often discretionary because such duties require wide degrees of reason and judgment.  *See, e.g.*, *Woods v. Ware*, 471 S.W.3d 385, 393 (Mo. App. W.D. 2015). "Implementing and adhering to safety policies involves 'highly discretionary supervisory and policy decisions [official immunity] is intended to shield.'" *Gray-Ross v. St. Louis Pub. Sch.*, 643 S.W.3d 665, 673 (Mo. App. E.D. 2022) (quoting *Southers*, 263 S.W.3d at 621) (alteration in original).

On the other hand, ministerial functions are acts "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Boever*, 296 S.W.3d at 492 (quoting *Southers*, 263 S.W.3d at 610).

Missouri courts consider three factors in determining whether an act is ministerial or discretionary: "(1) the nature of the duties; (2) how much policymaking or professional expertise

9

and judgment the act involves; and (3) the consequences of withholding immunity." *Davis*, 193 S.W.3d at 763 (citing *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985).

Applying the *Davis* factors to this case, we conclude that Wade's supervisory acts here were discretionary and therefore protected by official immunity. First, Wade was acting in his supervisory capacity. As such, his actions required a great amount of professional expertise and judgment. Finally, under the third prong, withholding immunity and opening Wade up to liability for this supervisory duty would negate the purpose of official immunity and would lead to the court unfairly questioning Wade's discretionary decisions with the benefit of hindsight. *See State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 194 (Mo. banc 2019).

As to Appellants' related argument that the contract required Wade to perform the simple ministerial duty to notify "residents" before the work began, we are unpersuaded. The agreement states: "The Contractor must contact the City at least five (5) working days prior to start of project so that residents can be notified of project commencement date." The issue becomes whether this language is mandatory in nature. We find that it is not.

Interpretation of a contract is a question of law which we review *de novo*. *Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 321 (Mo. App. E.D. 2022). The cardinal rule for interpreting a contract is to effectuate the parties' intent at the time of contracting. *Id.* at 325. To ascertain the original intent of the parties to a contract, we give the words their natural, ordinary, and common-sense meaning. *Id.* Where the terms in a contract are unambiguous, we will enforce the contract as written without resorting to canons of construction. *Behrick v. Konert Farms Homeowners' Ass'n*, 601 S.W.3d 567, 573 (Mo. App. E.D. 2020).

While the contract unambiguously mandated that PTT contact Eureka five days before the work was to begin, the contract is not mandatory regarding notifying the residents. With its

10

use of the word "can," it merely provides Eureka with the opportunity to do so. The plain and ordinary meaning of the term "can" refers to having the ability or permission to do something— rather than "shall"—which constitutes a requirement or mandatory obligation. *Can*, Black's Law Dictionary (11th ed. 2019); *Shall*, Black's Law Dictionary (11th ed. 2019).

Appellants do not point to any other evidence in this record that mandated Wade to notify neighboring landowners, and we find none. As a result, Wade is entitled to official immunity and to judgment as a matter of law. Point II is denied.

## Point III: Richard Green - Statute of Limitations.

In point III, Appellants argue the substitution of Green for "John Doe" was timely because it related back to the timely-filed original petition. We disagree. First, the statute of limitations for the claim against Green had run when Appellants sought to add Green and serve him with the amended petition. Moreover, since Green was not notified that he was a target of the lawsuit before the statute had run, the substitution does not relate back under Rule 55.33(c).

Missouri's statute of limitations for negligence actions is five years. § 516.120(4). That the statute of limitations has expired on a claim is an affirmative defense. § 509.090. Petitions originally filed within the statute of limitations often require amendments to add additional claims, defenses, or parties. *See* Rule 55.33. When these amendments are filed after the statute of limitations has run, the amendments must "relate back" to the original pleading to avoid being dismissed as time barred. Rule 55.33(c). But not all amendments relate back.

Rule 55.33(c) governs the relation back of amendments and provides that an amendment relates back if the claims in the amended pleading and original pleading arise out of the same conduct, transaction, or occurrence *and* if the defendant: (1) received notice of the action prior to the expiration of the statute of limitations; *and* (2) the defendant knew or should have known, prior to the expiration of the statute of limitations, that the action would have been brought

11

against them, but for a mistake. This rule requires such notice "as will not prejudice the party in maintaining the party's defense on the merits." *Id.*

The original petition here named "John Doe" as the painter and was filed on May 2, 2016, just weeks before the statute of limitations was set to expire on Appellants' negligence claims - sometime between May 28 and June 9, 2016. In July 2016, after the statute had run, Green first became aware of this case when PTT's attorney telephoned him requesting that he be a *witness.* During that call, the attorney told Green that he was not "involved" in the case. Then, during his March 13, 2017, deposition, Green first suspected that he could become a party. So he stopped the deposition to obtain counsel, stating: "I have not received no [sic] court papers, but I think I'd like to end this deposition and I think I want to go to Atlanta and get my attorney … I mean, I've got to cover my butt now because now I'm starting to feel that somebody may be trying to come after me at a later date."

On May 23, 2017, approximately a year after the statute had run on Appellants' claim against Green, Appellants moved to substitute Green as a party-defendant. Green was served on August 8, 2017. We conclude that because Green was not served before the statute expired, nor was he made aware of his liability exposure in this lawsuit before the statute expired, the claim against him does not relate back under Rule 55.33(c) and is therefore untimely.

For their part, Appellants argue that pleading a "John Doe" defendant with sufficient particularity should be sufficient to relate back after the plaintiff learns the true identity of "John Doe" and moves to substitute, even if the statute of limitations has expired. Appellants' argument has no support under current Missouri law. Rule 55.33(c) certainly does not support this argument since it requires notice of the action before the statute of limitation expires *and* that the defendant knew or should have known before the statute expired that he would have been sued but for a mistake. The Missouri Supreme Court dispelled any doubt in *State ex rel.*

12

*Holzum*: "Rule 55.33(c) now requires that the actual defendant receive 'notice' of the action within the time allowed for service." 342 S.W.3d 313, 317 (Mo. banc 2011). *Holzum* further acknowledges that the identity and notice requirements are separate requirements: "[T]he identity of the actual person should be ascertainable from the contents of the petition so that *when the party gets notice of the lawsuit*, he knows or should know—as the rule specifies—that the action has been brought against him." *Id.* (emphasis added).

We reject Appellants' reliance on *Maddux v. Gardner,* 192 S.W.2d 14 (Mo. App. 1945), a case that predates Rule 55.33(c). Moreover, we are troubled that Appellants misquoted *Holzum* in an effort to claim that *Maddux* is still good law. The court in *Maddux* allowed an amendment to relate back when the original suit was filed within the statute of limitations and the proper defendant was identified in the original pleading with sufficient particularity, but the defendant's name was substituted (rather than added) after the statute had run. *Id.* at 18. Regardless, *Maddux* predates Rule 55.33(c) and is no longer good law.

Appellants next argue that because of Green's "identity of interest" with his employer, PTT, timely notice to PTT constituted timely notice to Green as a matter of law. Indeed, an identity of interest under some circumstances may allow an untimely amended petition to relate back to a timely-filed lawsuit; but not here. *See Tyson v. Dixon*, 859 S.W.2d 758, 764 (Mo. App. W.D. 1993).

"The identity of interests analysis is generally relevant to show whether two parties are so closely related that notice to one imputes notice to the other." *Id.* Further, "[t]he 'identity of interests' principle is generally applied when two entities are involved whose identities are difficult to separate." *Id.* This analysis "is often applicable where the parties are 'a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past

13

and present forms of the same enterprise, or co-executors of an estate.'" *Id.* (quoting *Norton v. Int'l Harvester Co.*, 627 F.2d 18, 21 (7th Cir. 1980)). However, none of these examples are similar to an employer-employee relationship, and we are not aware of any precedent that supports its application here.

In fact, *Johnson v. Delmar Gardens West, Inc.,* is the only case we encountered which applied identity of interests in a party substitution, relation-back situation.[4] 335 S.W.3d 83 (Mo. App. E.D. 2011). In *Johnson*, the plaintiff intended to sue Delmar Gardens Chesterfield, but mistakenly sued Delmar Gardens West. *Id.* at 89. We found a sufficient identity of interest between Delmar Gardens West and Delmar Gardens Chesterfield to satisfy the notice requirement under Rule 55.33(c), allowing an amendment substituting Delmar Garden Chesterfield to relate back to the timely-filed original pleading. *Id.* at 89-90. Nevertheless, *Johnson* is distinguishable because the substitution was due to a "misnomer" (i.e., a *mistake* in naming the defendant), while here, there was no mistake because Green's identity was unknown to Appellants at the time they filed their original petition. *Id.* at 89. Further, in *Johnson*, we also found:

> [T]he record [was] replete with evidence that the Chesterfield Defendants had notice of the action and that they knew or should have known that but for Plaintiff's mistake, the action would have been brought against them. The record indicates that West and the Chesterfield Defendants have the same registered agent; their Annual Registration Report filed with the Secretary of State is filed by the same controller; and they share the same corporate headquarters, the same attorneys, and a majority of the same officers and directors.

---

[4] In *Johnson*, the plaintiff mistakenly filed a motion to *add* a party to the case rather than a motion to *substitute* a party. 335 S.W.3d at 88. This Court found that it was "clear that Plaintiff's addition of the Chesterfield Defendants was an attempt to correct Plaintiff's mistake in the identity of the proper defendant." *Id.* This Court allowed the addition because, "[a]lthough Plaintiff made a procedural error in correcting her mistake, we find that this mistake is not fatal to her action" because she was not adding the parties with the intention of seeking additional recovery. *Id.* at 89. This Court analyzed *Johnson* as a substitution case and, for clarity's sake, we cite it as such here. *See id.* at 89-90.

14

*Id.* at 89-90. None of these factors existed here.

Because *Green* was not notified that he was the "John Doe" defendant in this lawsuit until well after the statute of limitations had run, Green is entitled to judgment as a matter of law. Point III is denied.

### Point IV: Denial of Leave to Add Wrongful Death Claim to Petition.

The trial court denied Appellants leave to file their third amended petition, which sought to add a wrongful death claim against all defendants for the death of plaintiff Wayne Schaefer because (1) the statute of limitations expired in 2016 when the original statute expired on the negligence action; (2) Eureka and Wade are immune from the underlying liability; and (3) the timing of the amendment and its impact on the trial setting weighed against allowing it.

We reverse as to all defendants except Wade. The court erred with respect to the statute of limitations because Appellants' wrongful death claim accrued in 2021 when Mr. Schaefer died. With respect to the court's other rationale, that of the impact on the trial setting in this lengthy litigation, we find the court abused its discretion under Missouri's liberal amendment policy and the circumstances of this case. As to Wade, we affirm because he is protected by official immunity. Finally, as to Green, the fact that Appellants' negligence claim against him is time-barred does not bar their wrongful death claim against him.

1. Statute of Limitations.

We first address the court's ruling, which we find to be erroneous as a matter of law, that as to Green, Casey Thompson, and Structural Contractors, the statute of limitations on Appellants' wrongful death claim expired in 2016 even though the claim did not accrue until 2021. Since Wayne Schaefer died on March 26, 2021, the wrongful death claim that Respondents' negligent painting of the water tank caused Wayne Schaefer's death accrued on

15

that date. *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 710 (Mo. banc 2015), as modified (Oct. 27, 2015). Therefore, Appellants' motion for leave to add a wrongful death count to their petition, which they filed on June 1, 2021, just two months after Mr. Schaefer's death, was timely.

    2.   Abuse of Discretion and Rule 55.33(a): Amendments to pleadings.

Next, we turn to the court's rationale for denying the amendment because of the resulting delay and impact on the trial setting. Rule 55.33(a) governs amendments to pleadings and provides *inter alia* that "the pleading may be amended only by leave of court or by written consent of the adverse party." Although Rule 55.33(a) instructs trial courts to freely give leave to file amended pleadings "when justice so requires," "it is not mandatory that the court grant leave." *Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 751 (Mo. App. E.D. 2005). Because the trial court has broad discretion regarding amendments, we review the denial of leave to amend a pleading for an abuse of discretion. *Bd. of Comm'r of Cnty. of Franklin v. Twentieth Judicial Circuit by Lamke*, 630 S.W.3d 783, 788 (Mo. banc 2021). We will find an abuse of discretion if the ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Sherrer v. Boston Sci. Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020).

Missouri courts consider various factors when determining whether a trial court has abused its discretion in this context, including:

> 1) the hardship to the moving party that a denial would cause; 2) the reasons for the moving party's failure to include the matter in the original pleadings; 3) the timeliness of the application for leave to amend; and 4) the hardship or injustice that granting leave to amend would cause to the non-moving party.

*Concerned Citizens for Crystal City v. City of Crystal City*, 334 S.W.3d 519, 526 (Mo. App. E.D. 2010). Additionally, where "the record suggests that the trial court relied solely on the timing of the request, denial of a request for leave to amend is an abuse of discretion." *Sloan-Odum v.*

16

*Wilkerson*, 176 S.W.3d 723, 726 (Mo. App. E.D. 2005) (citing *Lester v. Sayles*, 850 S.W.2d 858, 870 (Mo. banc 1993)).

While we certainly acknowledge and respect the trial court's broad discretion to control its docket and to move cases along, in this case where the Appellants requested leave to amend within a couple months of the claim's accrual, we come down on the side of the strong public policy favoring liberal amendments of pleadings and the preference to litigating all related claims in one case. Specifically, the following circumstances support our conclusion: (1) the court's legal error regarding the statute of limitations; (2) the Appellants' prompt request to amend filed just two months after the wrongful death claim had accrued; and (3) the hardship, frankly to all parties, by requiring the wrongful death claim to be litigated separately, which is also contrary to the interests of judicial economy. *See Concerned Citizens for Crystal City*, 334 S.W.3d at 526. Therefore, we find the trial court abused its discretion in denying Appellants leave to add the wrongful death claims against Eureka, Green, Structural Contractors, and Casey Thompson.

3. Wrongful Death: Wade.

Because we have affirmed herein the summary judgment in favor of Wade on Appellants' negligence claim based on official immunity, we likewise affirm the trial court's denial of leave to add the wrongful death claim against Wade because that claim arose from the same circumstances and allegations of negligence.

4. Wrongful Death: Green

Inasmuch as we have affirmed herein the judgment in Green's favor on statute of limitations grounds as to Appellants' negligence claim against Green, the question becomes whether Appellants' wrongful death claim, which arose out of the same allegedly tortious

17

conduct, is also barred. Green argues as much and relies on the language of the wrongful death statute, section 537.080, that:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, *would have entitled* such person to recover damages in respect thereof, the person or party who, or the corporation which, *would have been liable if death had not ensued* shall be liable and an action for damages, notwithstanding the death of the person injured, which damages may be sued for.

(Emphasis added by Green). Green argues based on this language that since Appellants cannot recover against him for the pre-death injuries to Mr. Schaefer because the statute had run, Appellants likewise should not be allowed to recover for the claimed wrongful death of Mr. Schaefer. Nevertheless, Green does not direct us to any citation supporting this interpretation of the statute and we disagree with it and hold that the foregoing language of section 537.080 does not preclude Appellants' wrongful death claim against Green.

We find *Smith v. Brown & Williamson Tobacco Corp.,* 275 S.W.3d 748 (Mo. App. W.D. 2008), to be applicable and persuasive. Smith, a smoker, was diagnosed with lung cancer. *Id.* at 758. Prior to her death from a heart attack, she sued Brown & Williamson in federal court for cigarette-related products liability. *Id.* at 759-60. The court granted summary judgment against Smith on causation. *Id.* After Smith died, her survivors sued Brown & Williamson in state court for wrongful death alleging the same underlying torts: negligence and strict products liability. *Id.* at 760. Brown & Williamson argued that because Smith's pre-death claims had been adjudicated on their merits against her in federal court, Smith's survivors should be precluded from re-asserting them as part of their wrongful death action in state court. *Id.* at 761.

A case of first impression, the *Smith* court construed the same statutory language before us: "which, if death had not ensued, would have entitled such person to recover damages in respect thereof." *Id.* at 780 (quoting § 537.080.1). The court looked to other jurisdictions and

18

authorities and concluded that section 537.080 merely requires survivors to demonstrate the existence of the elements of an underlying tort prior to a decedent's death, irrespective whether the decedent would have actually been permitted to bring the claim. *Id.* at 789-90.[5]

The court found persuasive Dean Prosser's interpretation of this language to simply require that the underlying act committed be tortious. *Id.* at 780-81 (citing *Sea-Land Serv., Inc. v. Gaudet*, 414 U.S. 573, 581 n.8 (1974)). "This interpretation suggests that survivors need only show the elements of an underlying cause of action the decedent could have brought, regardless [of] whether the decedent had already asserted the cause of action before death." *Id.* at 766. Citing Prosser's interpretation and adhering to the Missouri Supreme Court's mandate that the wrongful death statute be applied liberally, with a view towards providing compensation, the *Smith* court held that "section 537.080 does not bar the wrongful death action filed in this case, despite Ms. Smith having brought a personal injury action during her lifetime for injuries resulting from the same cause of her death." *Id.* at 780, 781, 782 (citing *O'Grady v. Brown*, 654 S.W.2d 904, 908 (Mo. banc 1983)).

We agree with this interpretation of section 537.080 and hold that although Appellants' underlying negligence claim against Green is time-barred, this procedural barricade does not also bar Appellants' wrongful death claim against Green so long as Appellants can demonstrate the elements of the underlying cause of action Wayne Schaefer could have brought. Therefore, the trial court erred as a matter of law in denying Appellants leave to bring their wrongful death claim against Green. Point IV is granted as to Eureka, Structural Contractors, Casey Thompson, and Green. Point IV is denied as to Wade.

---

[5] Section 537.090, which governs damages in wrongful death claims, allows wrongful death claimants to recover as an element of damages the pre-death damages the "deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued."

**Conclusion**

For the foregoing reasons, we reverse and remand in part and affirm in part. We reverse the grant of summary judgment against Appellants as to Eureka in Point I. We affirm the summary judgment granted in favor of Wade and Green in Points II and III. In Point IV, we reverse the trial court's denial of leave to file the third amended petition as to Eureka, Green, Casey Thompson, and Structural Contractors, but affirm as to Wade.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Lisa P. Page, J. concur.